> The Court will discuss this, and all other outstanding matters, at the conference scheduled for Tuesday, November 23, 2021, at 3:00PM.
> So Ordered.
> 11/3/21 /s/ John G. Koeltl

# WILMERHALE

November 1, 2021

**BY ECF**

Alan E. Schoenfeld

+1 212 937 7294 (t)
+1 212 230 8888 (f)
alan.schoenfeld@wilmerhale.com

Hon. John G. Koeltl
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Seven Cases Filed By The Kingdom of Belgium, Federal Public Service Finance*, Nos. 21-cv-6392, 6399, 6402, 6404, 6405, 6407, 6408

Dear Judge Koeltl:

I write on behalf of all defendants in the above-captioned actions (other than FGC Securities LLC and Stephen Wheeler, who wrote separately) to request a pre-motion conference on anticipated motions to dismiss. Belgium Federal Public Service Finance (FPSF)—the agency of the Belgian government charged with tax assessment and collection—alleges that it erroneously paid dividend tax refunds to several U.S. pension plans and seeks a money judgment to recover. Defendants are those plans and persons who allegedly established or assisted the plans.

Under Belgian tax law, if a person receives a dividend from a Belgian company net of withholding tax but is exempt from taxation by a double taxation treaty, FPSF must refund the withheld tax upon request. Under the U.S.-Belgium Treaty, U.S. pension plans are such exempt entities, if they are the beneficial owners of the dividends. Beginning in 2012, the defendant pension plans invested in Belgian companies, thus becoming beneficial owners entitled to tax refunds from FPSF. *Xiphias* Compl. ¶ 24. The plans applied for and received tax refunds from FPSF until FPSF suspended payments in November 2015. *Id.* ¶ 44. FPSF now alleges that the plans defrauded it because they were not the beneficial owners of the shares under Belgian tax law. *Id.* ¶ 41.

Defendants anticipate moving to dismiss the complaints on three grounds. ***First***, the complaints are barred by the revenue rule, which prohibits courts from hearing claims by foreign sovereigns that seek direct or indirect enforcement of their tax laws. *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 130-131 (2d Cir. 2001). FPSF's claims seek "direct enforcement" of foreign tax law because they are claims by a foreign sovereign seeking damages sustained in its capacity as a sovereign and caused by alleged violations of its tax laws. *Eur. Cmty. v. RJR Nabisco, Inc.*, 355 F.3d 123, 131 (2d Cir. 2004), *judgment vacated*, 544 U.S. 1012 (2005), *reinstated*, 424 F.3d 175 (2d Cir. 2005). FPSF likewise seeks indirect enforcement of Belgian tax laws, which "occurs when a foreign state seeks a remedy that would give extraterritorial effect to its tax laws." *Id.* at 131. The revenue rule bars the claims because they seek enforcement through a remedy—a money judgment—that would give extraterritorial effect to Belgian tax law, which FPSF believes requires the plans to repay the tax refunds.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

Case 1:21-cv-06392-JGK   Document 41   Filed 11/01/21   Page 2 of 3
Case 1:21-cv-06392-JGK   Document 42   Filed 11/04/21   Page 2 of 3

Hon. John G. Koeltl
November 1, 2021
Page 2

WILMERHALE

FPSF is likely to rely on *In re Skat*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019), where the court denied a motion to dismiss, under the revenue rule, similar claims brought by the Danish tax authority. The court faulted defendants for failing to support their arguments with evidence concerning Danish law or "documentation or any evidence of ownership." *Id.* at 313-316. Defendants intend to address those perceived deficiencies here, and will show that Belgian tax law controls the questions of whether the plans were entitled to the tax refunds and whether they were beneficial owners of the shares.[1] Moreover, Defendants respectfully submit that *Skat* was incorrectly decided and ought not be followed. Among other things, the court's view that allegations of fraud provide an exception to the revenue rule, *id.* at 311, conflicts with binding precedent. *Canada*, 268 F.3d at 106-107; *Eur. Cmty.*, 355 F.3d 127-128.

***Second***, the complaints are barred by the applicable statute of limitations. Under New York law, fraud claims must be brought within six years from the date the alleged fraud was committed, or two years from the date the plaintiff did discover or "with reasonable diligence" could have discovered the fraud, whichever is longer. N.Y. C.P.L.R. § 213(8); *see also Grasso v. United Grp. of Cos., Inc.*, 806 F. App'x 69, 71 (2d Cir. 2020) (plaintiff's duty to inquire is triggered "[o]nce the circumstances reasonably suggest that plaintiff may have been defrauded") (cleaned up).[2]

All of the specific conduct alleged in the complaints occurred prior to July 27, 2015, six years before the complaints were filed on July 27, 2021. The complaints allege that the tax refund applications were submitted as early as August 13, 2012, *see Michelle Investments* Compl. Ex. A, but no later than November 14, 2014, *see Traden* Compl. Ex. A. FPSF does not allege that the Defendants engaged in any specific fraudulent conduct later than November 2014 or even that FPSF paid any of the identified refund applications at any point after July 27, 2015.[3] Accordingly, its claims should be dismissed as time-barred. *See Grasso*, 806 F. App'x at 71.

No doubt in an attempt to circumvent the six-year limitations period, FPSF summarily alleges, without explanation or support, that it "discovered the facts set forth above concerning [Defendants] in or about January 2021." *See, e.g., Xiphias* Compl ¶ 27. But this one-sentence allegation is wholly inadequate to trigger the alternative two-year discovery rule limitations period, particularly in the face of publicly available, widely known facts that put FPSF on inquiry notice well before July 27, 2019. The conduct in question was already the subject of multiple news accounts and civil actions (including in this district) as early as 2018, all of which constitute publicly available "storm warnings" sufficient to have triggered FPSF's duty of inquiry. *See LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003). And indeed, any suggestion that FPSF was not on notice of Defendants' actions is belied by *its own allegation* that

---

[1] The revenue rule goes to this Court's subject-matter jurisdiction, and so the motion to dismiss will be brought under Rule 12(b)(1), which allows the Court to consider matters beyond the pleadings.

[2] Because FPSF is a non-New York resident asserting a cause of action that arguably accrued outside of New York, New York's "borrowing statute," C.P.L.R. § 202, may apply to these cases. If so, FPSF's actions would be subject to the shorter of either New York's or Belgium's limitations periods.

[3] Whether FPSF may have considered refund claims made before July 2015 during the period thereafter is irrelevant because the complaints do not allege wrongful acts during that later period. *See Panos v. Universal Forest Prod., Inc.*, 2020 WL 416445, at *7 (S.D.N.Y. Jan. 27, 2020), *aff'd* 828 F. App'x 81 (2d Cir. 2020).

Hon. John G. Koeltl
November 1, 2021
Page 3

WILMERHALE

the supposed scheme ran "until at least November 2015 *when FPSF Belgium suspended payments on refund claims* involving Solo Capital."[4] *See, e.g., Xiphias* Compl. ¶ 44 (emphasis added). The complaints are thus time-barred, and should be dismissed. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 156 (2d Cir. 2012) (affirming 12(b)(6) dismissal under N.Y. C.P.L.R. § 213(8)).

***Third***, Alicia Colodner and the pension plan defendants intend to move to dismiss the complaints in which they are named because those complaints fail to meet the pleading standards of Fed. R. Civ. P. 8(a) and 9(b). The *Xiphias* and *Michelle Investments* complaints seek to hold Ms. Colodner liable for aiding and abetting fraud based solely on the allegation that she witnessed the signing of a 2012 Special Power of Attorney permitting an agent to collect tax refunds on behalf of the pension funds. *Xiphias* Compl. ¶ 29; *Michelle* Compl. ¶ 28. This lone fact, even accepted as true, cannot establish either "substantial assistance to advance the fraud's commission" or "actual knowledge of [the] fraud." *Lerner v. Fleet Bank*, 459 F.3d 273, 292-93 (2d Cir. 2006) (cleaned up).[5]

The *Delvian* complaint's attempt to hold Ms. Colodner and Delvian LLC Pension Plan liable for fraud as principals likewise fails.[6] In order to satisfy FRCP 9(b), "a plaintiff [alleging fraud must] specify the fraudulent statements, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 437 (S.D.N.Y. 2017). FPSF nowhere states that *Ms. Colodner* made the misrepresentations it asserts are in the refund claims. Instead, it makes broad allegations lumping all defendants together. *See, e.g., In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 213 (S.D.N.Y. 2019) ("[S]weeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." (internal quotation marks omitted)). The complaint's allegation, "[o]n information and belief," that multiple defendants "caused [an agent] to include [a statement from the IRS based on false information] in the tax refund requests," *Delvian* Compl. ¶ 34, is unavailing because conclusory assertions that a statement was made at a defendant's direction do not satisfy Rule 9(b). *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 493-94 (S.D.N.Y. 2017) (collecting cases). Similarly, the fact that Delvian was the entity associated with the refund requests does not make it an appropriate defendant in a fraud case. *See Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 291 (S.D.N.Y. 1996) ("[A]ttribution [of a false statement] to a corporate entity or its representative is insufficient" under Rule 9(b)).

Respectfully submitted,

/s/ *Alan E. Schoenfeld*
Alan E. Schoenfeld

---

[4] Solo Capital is one of a number of regulated custodians through which the defendant pension plans engaged in the trading at issue in these complaints. *See generally Xiphias* Compl. ¶ 24.

[5] Although Rule 9(b) permits knowledge to be alleged more generally than facts, the Second Circuit has cautioned that plaintiffs must still "allege facts that give rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290.

[6] The pension plans in the other six complaints intend to join in this motion, as the allegations against each are insufficient under Rule 9(b).