

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE:

KINGDOM OF BELGIUM,
FEDERAL PUBLIC SERVICE FINANCE
PENSION PLAN LITIGATION

Lead Case: No. 21 Civ. 6392 (JGK)
Member Cases:
    No. 21 Civ. 6392 (JGK)
    No. 21 Civ. 6399 (JGK)
    No. 21 Civ. 6402 (JGK)
    No. 21 Civ. 6404 (JGK)
    No. 21 Civ. 6405 (JGK)
    No. 21 Civ. 6407 (JGK)
    No. 21 Civ. 6408 (JGK)

**DECLARATION OF BERNARD PEETERS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 44.1**

## I.    BACKGROUND OF THIS DECLARATION

I, Bernard Peeters, state the following:

1.    I have written this legal opinion at the request of Defendants in the above-captioned litigation, to be submitted to the United States District Court for the Southern District of New York.

2.    The opinion rendered herein is a legal opinion on legal matters that I am entitled to give based on my expertise in the area of Belgian tax law.

3.    My compensation has been agreed on a per-hour fee basis. It does not depend in any way on the opinions I have rendered or the outcome of the court case.

4.    I have based this declaration solely on official rules and documents, without regard to any other fact of which I may have been informed by Defendants or any other person.

5.    I have provided the original text and English translations of the relevant Belgian laws, regulations, and materials in this declaration.



Advocaten / Avocats / Lawyers

## II.   EXPERTISE

6.      I am a lawyer in Belgium and have been practicing tax law for 40 years, including 17 as a tax consultant and 23 as a lawyer at the Brussels Bar. I am a senior partner of Tiberghien Lawyers, which is the largest tax boutique law firm in Belgium, with over 100 tax lawyers and which was founded more than 80 years ago by the late Albert Tiberghien.

7.      I have been a guest professor at the University of Brussels ("VUB") for 35 years. I have been appointed as a Deputy Judge of the Antwerp Court of Appeal since 2011. Since 2020 I am also included by Royal Decree in the Belgian list of independent persons of standing within the framework of the European Directive of 10 October 2017 on tax dispute resolution mechanisms in the European Union. I am also a member of the editorial board of a number of tax journals in Belgium, the current vice president of the Belgian branch of the International Fiscal Association ("IFA"), and a member of the tax & legal committee of the American Chamber of Commerce in Belgium. I will become the president of the Belgian branch of IFA by the end of this year.

8.      My CV is attached to this Declaration as Exhibit 1.

2



### III.     LEGAL OPINION

### A.     Belgian Hierarchy of Legal Authority

9.     Under the hierarchy of legal authorities in Belgium, the Constitution prevails over statutes such as special majority legislation, which prevails over regular legislation. Statutory legislation prevails over Royal Decrees and Ministerial Decrees. These Decrees, which are regulations by the Executive, are Belgian law.

10.     A treaty is hierarchically superior to legislation and the Constitution, once ratified via a Belgian statute endorsing the treaty.[1] This is a 'principle of constitutional value'[2] and is settled case law by both the Court of Cassation and the Constitutional Court. Every Belgian judge who is confronted with a conflict between a mere domestic statute and a treaty provision with direct effect, must disregard the former and apply the latter.[3]

Article 159 of the Belgian Constitution states:

> '*Courts only apply general, provincial or local decisions and regulations provided that they are in accordance with the law*'

This includes tax treaty provisions, which have direct effect as of their endorsement and subsequent ratification.

---

[1] This follows from a principled and consistent case law of the Court of Cassation. This was first explicitly mentioned in a case of 27 May 1971, *Arr. Cass.* 1971, 959. This has been confirmed by that same court, e.g. in a case of 5 December 1994, *TRD&I* 1995, 413.

[2] Advice Council of State nr. 29.994/VR, 25 April 2000. See also *i.a.* Jan Velaers, De Grondwet. Een artikelsgewijze commentaar, book III, Article 167, nr. 74.

[3] Jan Velaers, De Grondwet. Een artikelsgewijze commentaar, book III, Article 167, nr. 77.

**Tiberghien.**
Advocaten / Avocats / Lawyers

After a tax treaty has received the endorsement of the parliaments of all legislatures involved, the treaty has become a part of Belgian tax law.

11.     The Belgian legal system is a monistic system in which duly endorsed treaties become part of the internal, Belgian legal system.  The Belgian monist view as such entails that it is the treaty provision itself, and not the legal act by which Belgian parliament has assented to that treaty, that has introduced the norm into the Belgian domestic legal order.[4]

12.     Tax treaty provisions as such are also provisions of Belgian tax law. In his opinion, which was followed by the Court of Cassation settling the monist view discussion, the Attorney-General to the Court of Cassation confirmed in this regard:

> '*L'assentiment est l'acte par lequel les Chambres législatives consacrent des textes qui ont été « établis, écrit M. Masquelin[5], par un organe de la puissance publique autre que le législatif, et leur confèrent en principe les caractères qui s'attachent à la loi proprement dite".*'

Author's translation :

---

[4] Rik Smet, *Treaty-Making in Federations. Democratic Legitimacy Tried and Tested in Matters of Taxation* (Cambridge, Intersentia, 2021, 74). See also Johan Vande Lanotte , Geert Goedertier , Yves Haeck , Jurgen Goossens and Tom De Pelsmaeker , Handboek Belgisch Publiekrecht (Bruges , die Keure , 2014 ) para. 210. Stef Feyen , ' Verdragsrechtelijke inwerking. Enkele overwegingen omtrent de inwerkingsmechanismen in de Belgische rechtsorde en hun rechtstheoretische grondslag ' *CDPK* ( 2008 ) , 166, at p. 179.

[55] Jean Masquelin, 'Les proceeds de législation', *ADSP* (1960), vol. 20, p. 386, quoted by Attorney-General Walter Ganshof Van der Meersch in his conclusion to Cass. 27 May 1971, *Pas.* (1971), I, 886, at 894.

**Tiberghien .**
Advocaten / Avocats / Lawyers

> '*Endorsement is the act by which the legislative Chambers consecrate texts that have been "established," writes Mr. Masquelin, "by an organ of public power other than the legislature, and confer on them in principle the characteristics which are attached to the law proper".*'

'The law proper' refers to domestic legal statutes.

13.     Where a treaty operates to create entitlements or obligations related to transactions or occurrences that are legally recognized to have occurred in Belgium, then the treaty—as it operates there—is part of the Belgian internal legal order. And it is therefore part and parcel of Belgian law.[6]

14.     The current double taxation treaty between Belgium and the United States was signed on 27 November 2006, ratified after receiving the necessary legislature endorsement by law of 3 June 2007, entered into force on 28 December 2007, and was published in the Belgian Gazette on 9 January 2008[7]. Since 28 December 2007, it has been part of Belgian domestic tax law and enforceable against the Belgian state. Since 9 January 2008 it is also enforceable against the Belgian taxpayer.

---

[6] Rik Smet, *Treaty-Making in Federations. Democratic Legitimacy Tried and Tested in Matters of Taxation* (Cambridge, Intersentia, 2021, 74). See also Johan Vande Lanotte , Geert Goedertier , Yves Haeck , Jurgen Goossens and Tom De Pelsmaeker , Handboek Belgisch Publiekrecht (Bruges , die Keure , 2014 ) para. 210. Stef Feyen, ' Verdragsrechtelijke inwerking. Enkele overwegingen omtrent de inwerkingsmechanismen in de Belgische rechtsorde en hun rechtstheoretische grondslag ' *CDPK* ( 2008 ) , 166, at p. 179.

[7] Law of 3 June 2007, *Belgian Gazette* 9 January 2008.



**B.** **Withholding Tax on Dividends under Belgian Tax Law**

15.     Under Belgian tax law—specifically, the Belgian Income Tax Code ("BITC")—dividends to non-residents are taxed at the source. The recipient of the dividend may also incur tax on the same dividend in his/her home country. In that case, the dividend could be taxed once in the source state (Belgium) and once in the resident state. One purpose of tax treaties is to eliminate the risk of this double taxation.

16.     Belgian corporations may issue dividends, which are subject to taxation. When Belgian corporations issue dividends, the shareholders receive that dividend income—but not the entire dividend income.  Belgian corporations withhold the tax from shareholders who are entitled to dividend payments, so that the shareholders receive net dividend payments (amounts equal to the dividend less withholding tax). The withholding tax on dividends is due to the Kingdom of Belgium, Federal Public Service Finance ("FPSF") when the dividend is awarded or disbursed by the company distributing the dividend.[8]  The Belgian dividend paying company must withhold the withholding tax and pay it to the Belgian treasury.[9]  FPSF collects dividend withholding tax from those Belgian companies, and not from anyone else.  It must do this within a period of 15 days after awarding or disbursing the dividend.[10]

---

[8] Art. 267, par. 1 BITC.

[9] Art. 261, 1° BITC.

[10] Art. 412, first section BITC and art. 84-85 Royal Decree to the BITC.

Tiberghien.
Advocaten / Avocats / Lawyers

17.     For non-resident shareholders without a permanent establishment for tax purposes in Belgium, the withholding tax is a final tax[11], unless an exemption or a reduced tax rate applies and a refund can be claimed.  Under another procedure - prescribed by Royal Decree - with specific time constraints, some shareholders may obtain an exemption or reduction at source.  Specific criteria apply and this procedure is not compulsory for the shareholder or the Belgian corporation issuing the dividend.

18.     Shareholders have the option of seeking to have dividend withholding tax refunded by FPSF after it has been withheld by the Belgian dividend paying corporation. Under the double taxation treaty between Belgium and the United States, dividends paid by a Belgian company to an American resident are subject to reduced taxation, and certain tax payers, including pension plans, are entitled to an exemption from all dividend withholding tax, and can reclaim the withheld tax in its entirety.

A US resident pension fund is entitled to a full refund of Belgian withholding tax deducted from the Belgian dividend with the net Belgian dividend being received by the US pension fund under Article 3(1)(k), Article 4(3)(a), Article 10(4)(b) and Article 10(7) of the Belgium – US Tax Treaty:

Article 3(1)(k) defines "pension fund" as "*any person established in a Contracting State that is: i) operated principally: A) to administer or provide pension or retirement benefits; or B) to earn income for the benefit of one or more arrangements described in A); and ii) is either: (…) B) in the case of the United Sates, exempt from tax in the United States with respect to the activities described in clause i) of this subparagraph.*"

---

[11] Art. 228, par. 2, 2° and 248 BITC.



Article 4(3)(a) (Residence) provides that a pension fund is a resident in the US if it is established in the US: *"The term "resident of a Contracting State" includes… a pension fund established in that State… notwithstanding that all or part of its income or gains may be exempt from tax under the domestic law of that State."*

Article 10(4)(b) (Dividends) provides an exemption from tax on dividends if the beneficial owner is *"a pension fund that is a resident of the United States, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise."*

Article 10(7) defines dividends as '*income from shares or other rights, not being debt-claims, participating in profits, as well as income that is subjected to the same taxation treatment as income from shares under the laws of the State of which the payer is a resident*'.

19.     For US resident entities or persons that are not entitled to an exemption, the tax treaty still foresees reduced tax rates. Article 10(2) of the double taxation treaty states:

> '*However, such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident and according to the laws of that State, but if the dividends are beneficially owned by a resident of the other Contracting State, except as otherwise provided, the tax so charged shall not exceed :*
>
> *a) 5 percent of the gross amount of the dividends if the beneficial owner is a company that owns directly at least 10 percent of the voting stock of the company paying the dividends;*
>
> *b) 15 percent of the gross amount of the dividends in all other cases*'

**Tiberghien.**
Advocaten / Avocats / Lawyers

20.   The Belgian dividend paying company will, however, withhold the standard statutory withholding tax rates. This standard rate has fluctuated over time. Until 2011 it amounted to 15%, in 2012 to 21%[12] , from 2013 until 2015 it amounted to 25%, in 2016 to 27% and as of 2017 it currently stands at 30%.[13]

Non-qualifying pension funds, non-qualifying companies and natural persons that are residents of the United States are therefore eligible for a partial refund.  And, as an example, under the treaty, an individual United States resident taxpayer who receives dividend income from a Belgian corporation net of withholding tax of 25% is entitled to a 10% refund, for a maximum allowable tax rate of 15%.

How this refund can be claimed is addressed in the next section.

**C.    Procedure for Requesting and Receiving a Withholding Tax Refund by a Non-Resident under Belgian Tax Law**

21.   Regarding the procedure to claim treaty benefits, article 24(5) of the double taxation treaty states:

> '*The competent authorities of the Contracting States may agree on administrative measures necessary to carry out the provisions of the Convention and particularly on the documentation to be furnished by a resident of a Contracting State in order to support its claim for the exemptions or reductions of tax provided for in the Convention.*'

---

[12] Under specific circumstances, an additional levy of 4% was due on certain dividends received in the year 2012. See art. 174/1 BITC, as repealed from 1 January 2013.

[13] Art. 269, 1° BITC, as applicable in the relevant year.

**Tiberghien.**
Advocaten / Avocats / Lawyers

22.     The competent authorities of the United States (*i.e.*, the Internal Revenue Service ("IRS")) and Belgium (*i.e.* FPSF) have not concluded such agreement.

In its Commentary to the Belgium – United States tax treaty, the FPSF addresses this provision and states that (Dutch original text):

> '*De Overeenkomst regelt niet de procedure volgens dewelke de overeenkomstsluitende Staten de verdragsvoordelen verlenen. Elke Staat is vrij gebruik te maken van de procedure waarin zijn interne wetgeving of zijn administratieve praktijk voorziet. Zo kan een Staat, na de voorwaarden voor de toepassing van een verdragsvoordeel te hebben gecontroleerd, automatisch de belasting die hij ingevolge de Overeenkomst mag inhouden, beperken of kan hij de belasting heffen waarin zijn nationale wetgeving voorziet en daarna de gehele belasting of een gedeelte van die belasting dat meer bedraagt dan het bedrag dat hij mag inhouden terugbetalen. Paragraaf 5 geeft de bevoegde autoriteiten met name de mogelijkheid om tot een akkoord te komen inzake de formaliteiten waarin elke overeenkomstsluitende Staat voorziet voor het toekennen van de verdragsvoordelen.*'

Author's English translation (emphasis added) :

10



'*The Agreement does not regulate the procedure by which Contracting States grant treaty benefits.* **Each State is free to use the procedure provided for in its internal legislation or administrative practice**. *Thus, a State, after verifying the conditions for the application of a treaty benefit, may automatically limit the tax it may withhold under the Convention, or it may levy the tax provided for in its domestic law and thereafter refund all or part of that tax in excess of the amount it may withhold. Paragraph 5 in particular allows the competent authorities to reach an agreement on the formalities provided for by each Contracting State for the granting of the treaty benefits.*'

23.    From this it follows that the procedure for claiming a refund of dividend withholding tax is subject to Belgian domestic tax law or administrative practice and that law or administrative practice alone.

### 1.    276 Div procedure

24.    A non-resident shareholder seeking a reclaim of Belgian withholding tax on dividends is submitted to a process administered by the Belgian tax authority (FPSF).  Withholding tax refunds can be claimed only from FPSF,  which is the only entity—governmental or not—that administers Belgium's withholding tax reclaim system.

To initiate the process for reclaiming withheld dividend tax, the non-resident shareholder must complete a form entitled '276 Div' that is made available by the Belgian tax authority.

**Tiberghien .**
*Advocaten / Avocats / Lawyers*

25.     The shareholder must file two copies of the form 276 Div. A blank copy of the current version of this form (in effect since 2014) is attached as Exhibit 2. The explanatory note to this form is attached as Exhibit 3. The claimant must complete Parts I and II of these forms. Those sections include information about the beneficial owner, the claimant (if this is not the beneficial owner itself), and the dividend payment. More specifically, the information to be provided in parts I and II includes:

- The applicable tax treaty pursuant to which a refund is claimed

- The name, address and company number of the Belgian corporation that paid the dividend

- The name of the beneficial owner of the dividends, as well as his/her/its fiscal identification number in the state of residence, legal form and address

- The nature and form of the shares, date of issue and payment of the dividend, the coupon number, the number of coupons as well as the net dividend per coupon and the total net dividend

- The bank account number to which the refund should be paid, the name and address of the bank branch where the bank account is held, and the name of the person or entity who opened the bank account.

- If the refund sought is for a third party, a proxy must be attached. A refund can only be claimed by an agent if it is duly authorized to do so by the beneficial owner. In that case, the agent must provide evidence of its authority to receive the refund. This evidence must be a hand-written statement by the beneficial owner of the dividends, or his signature must be preceded by the hand-written mention 'Valid proxy'.

12

**Tiberghien .**
*Advocaten / Avocats / Lawyers*

26.     The above mentioned 276 Div procedure is an administrative procedure established by the FPSF in an attempt to streamline and standardize refund claims. The requested information is meant to make it easier for FPSF to assess whether or not the claim is valid and the refund can be awarded. Failing to provide (all) aforementioned information or even to follow the 276 Div procedure does not mean that no refund can be claimed and/or made.[14]

27.     A copy of the form 276 Div is to be sent to the Belgian tax authorities, and directed to the 'Bureau Central de Taxation de Bruxelles-Etranger' in Brussels, which is a part of FPSF. The Belgian tax authority reviews the information provided in the 276 Div form together with any other information it receives, and makes an administrative determination as to whether the non-resident shareholder is entitled to a refund of withheld dividend tax.

28.     As part of that administrative determination, FPSF verifies (1) whether the applicant was the beneficial owner of dividends issued by Belgian companies, (2) whether the applicant was otherwise qualified to receive a reimbursement benefit, and (3) if so, how much.

29.     The tax authority can also request additional information or evidence that the claimant is duly authorized to claim the refund, or other additional information it deems fit or needed to take a decision regarding the refund.  Ultimately, it will either approve a refund, or deny it and inform the claimant thereof in writing. The claimant will be notified in writing of the decision by the Belgian tax administration concerning his claim.[15] If FPSF verifies that the information provided by the claimant demonstrates entitlement under the applicable law requirements, FPSF will refund the withholding tax.

---

[14] See *i.a.* Rb. Gent 9 June 2004, *FJF* 2005/68.

[15] See the explanatory note to form 276 Div.

13

**Tiberghien.**
Advocaten / Avocats / Lawyers

30.     The taxpayer will receive a document with the decision, including the amount of the refund. That document also includes a registration number for the taxpayer, which is mainly for future reference and to ease future procedures regarding other, future claims for refunds of dividend withholding taxes by the same taxpayer.

31.     If no exemption has been requested up front, the procedure under the 276 Div form is the usual procedure for filing a refund claim. It is also preferred by the FPSF that this procedure is followed. It is the tax administration that must establish whether the requirements for a refund are met and that must determine whether or not the refund can be made.

32.     The request for refund can also be denied if the tax authority considers that not all requirements are met. In that case, the taxpayer can file an administrative appeal ('bezwaarschrift')[16] with the FPSF. If after this administrative appeal the requested refund is still denied, or the tax authorities have not replied within a period of 6 months to this administrative appeal, the taxpayer can file a tax claim before the tax chamber of the court of first instance[17].

33.     If the tax authorities do not reply within a reasonable timeframe, the taxpayer can lodge an administrative appeal. The taxpayer can even refrain from following the 276 Div procedure altogether and immediately file an administrative appeal, although this is usually not done.

---

[16] Art. 366 BITC.

[17] Art. 1385*undecies* Belgian Judicial Code.



**Tiberghien.**
Advocaten / Avocats / Lawyers

## 2.    Administrative appeal

34.    As mentioned above, the taxpayer can also file an administrative appeal. This can happen instead of filing a 276 Div form, while the 276 Div procedure is still pending, or if FPSF in part or wholly refused the refund. This is a standard procedure in Belgian income tax law and the procedure is laid down in the BITC and the Royal Decree to the BITC.

Art. 119, par. 1 Royal Decree to the BITC provides (author's translation of Dutch original):

> *'Provided that, for this purpose, in the forms and time limits prescribed in Article 371 of the Income Tax Code 1992, an administrative appeal shall be filed with the director of direct taxation of the province or region in whose jurisdiction the withholding tax has been deposited, the refund of the withholding tax collected at source may be obtained by:*
>
> *[…]*
>
> *2° non-resident savers, in cases where that withholding tax has been levied at source while they can actually enjoy the waiver of the withholding tax collection'.*

The referred to article 371 BITC states (author's translation from Dutch original):

> '*Administrative appeals must state the grounds on which they are based and must be submitted, on pain of forfeiture, within six months of the third working day following the date of dispatch of […] the date of notification of […] the collection of the taxes in a way other than by assessment form'.*

Because there is no notification by the tax authorities of the collection of withholding tax to the shareholder, this period in which the administrative appeal must be filed does not apply. Therefore, article 368 BITC provides (author's translation from Dutch original):

15



'*In the absence of notification of the collection of […] the withholding tax […] in a manner other than by assessment, the application for reimbursement of these withholdings unduly deposited in the Treasury shall lapse after five years from the first day of January of the year in which these withholdings were deposited*'.

35.  The taxpayer could also request an ex officio relief for unduly paid taxes because of i.a. double taxation. Art. 376 par. 1 BITC states (author's translation of Dutch original):

'*The Advisory-General of the Administration in charge of the establishment of income taxes or the official delegated by him shall grant ex officio exemption from over-taxation arising from material errors, from double taxation, as well as from over-taxation which would appear from new documents or facts found to be adequate, the late presentation or invocation of which by the taxpayer is justified by legitimate reasons and provided that:*

*1° this over-taxation was established by the tax administration or by the taxpayer, by his spouse on whose property the assessment is imposed or by the co-debtor [] and which was notified to the administration within five years from January 1 of the year in which the tax was established;*

*2° the assessment has not already been the subject of a notice of objection giving rise to a final decision on the merits.*'

16


**Tiberghien .**
Advocaten / Avocats / Lawyers

D.    **For Purposes Of Refund Entitlement, "Beneficial Owner" Is Defined By Belgian Tax Law**

36.    Under Belgian tax law, different withholding tax exemptions or refunds require different criteria to be met. To be eligible for an exemption from or refund of withholding tax on dividends, pension funds and other 'non-resident savers' must be the beneficial owners of the dividends.

37.    The Treaty—which is part of Belgian tax law—provides that Belgium may not tax dividends paid by a Belgian corporation to certain US resident pension funds. Article 10(4) of this treaty states:

> '*Notwithstanding the provisions of paragraph 2, where the company paying the dividends is a resident of Belgium, such dividends shall not be taxed in Belgium if the beneficial owner of the dividends is:*
>
> a)    *[ ... ], or:*
>
> b)    *a pension fund that is a resident of the United States, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise.*'

Art. 3(2) of the Treaty states:

> '*As regards the application of the Convention at any time by a Contracting State, any term not defined therein shall, unless the context otherwise requires, or the competent authorities agree to a common meaning pursuant to the provisions of Article 24 (Mutual Agreement Procedure), have the meaning which it has at that time under the law of that State for the purposes of the taxes to which the Convention applies, any meaning under the applicable tax laws of that State prevailing over a meaning given to the term under other laws of that State.*'

17

**Tiberghien.**
Advocaten / Avocats / Lawyers

Because the term "beneficial owner" is not expressly defined in the Treaty, the result of Article 3(2) is that for purposes of Belgian dividend withholding tax refunds, the term "beneficial owner" is defined by Belgian tax law.

38.     This has been confirmed in both the Technical Explanation to the Treaty promulgated by the US Department of Treasury and by Belgium. The Technical Explanation by the US Department of Treasury in this regard confirms:

> '*The term "beneficial owner" is not defined in the Convention, and is, therefore, defined as under the internal law of the country imposing tax (i.e., the source country). The beneficial owner of the dividend for purposes of Article 10 is the person to which the dividend income is attributable for tax purposes under the laws of the source State. Thus, if a dividend paid by a corporation that is a resident of one of the States (as determined under Article 4 (Residence)) is received by a nominee or agent that is a resident of the other State on behalf of a person that is not a resident of that other State, the dividend is not entitled to the benefits of this Article. However, a dividend received by a nominee on behalf of a resident of that other State would be entitled to benefits. These interpretations are confirmed by paragraph 12 of the Commentary to Article 10 of the OECD Model.*'

39.     At the occasion of the endorsement procedure in Belgian federal parliament for this Belgium – United States tax treaty, it was also confirmed that the term beneficial owner is defined by Belgian tax law and refers to *legal* ownership (author's translation and emphasis):

18

**Tiberghien.**
Advocaten / Avocats / Lawyers

> *'The Belgian tax administration interprets this expression in the light of the OECD commentary, in particular of paragraphs 12 to 12.2 of the Commentary to article 10. In these comments, neither an intermediary who receives income in the name and on behalf of a third party (e.g. a mandatory), nor an ordinary fiduciary owner or an ordinary director working on behalf of third parties shall be regarded as "beneficial owner."*
>
> *In order to determine whether the person receiving the income is a mandatory, fiduciary owner or director, **the Belgian tax administration examines the factual circumstances not on the basis of economic considerations, but on the basis of a legal analysis**. This is in line with the principle applied in the Belgian tax system, in which tax is levied based on the legal reality and not on economic reality.'[18]*

40.     When interpreting a treaty, the parliamentary documents to the endorsement law prevail over any other meaning given to the same or similar terms in other documents, including OECD Commentaries to the OECD Model Convention. It is therefore beyond doubt that the meaning of beneficial owner, in the sense of the Belgium – United States double tax treaty is to be found by reference to Belgian tax law, and not in international tax law or in the Belgium – United States double tax treaty.

41.     This has also been confirmed by the Belgian Minister of Finance at other instances.[19]

---

[19] Parl. Q. n° 802, 28 March 2006, *Beknopt Verslag*, Commissie voor Financiën, nr. COM 906, p. 8-13.

**Tiberghien.**
Advocaten / Avocats / Lawyers

42.     Given the above, whether a US pension fund is the beneficial owner of a Belgian sourced income is to be examined according to Belgian tax law.

43.     Under Belgian tax law, the beneficial owner ("legal owner") of shares refers to the person or entity that has a legal claim to the proceeds of the shares. In the period 2012-2015, the Belgian Company code posited to this effect regarding joint stock companies:

>  '*The ownership of the shares is evidenced by the registration in the share register. Certificates of that registration are issued to the holders of the securities.*'[20]

44.     But shares can also be dematerialized. In fact, between 2012-2015, free float shares of quoted Belgian companies were dematerialized.  Such dematerialized shares are represented by a book entry on a named account.  This account may be held by the shareholder or by a registered accountholder.

>  '*The dematerialized security is represented by an account entry, in the name of the owner or holder, at a settlement institution or at an authorized account holder. The security booked on account is transferred by transfer from account to account.*[21]

---

[20] Art. 359 Company Code.

[21] Art. 468 Company Code.

**Tiberghien.**
Advocaten / Avocats / Lawyers

45.     In my opinion, under Belgian law an agreement between parties suffices to transfer legal ownership.  In other words, a binding agreement between two parties involving the purchase of a fixed quantity of shares at a specific price is effective to transfer legal (and thus beneficial) ownership from the seller to the buyer.  For purposes of Belgian tax law, ownership and beneficial ownership can be acquired at the time of the agreement to transact.  (As an example, an individual can buy shares in the morning, sell them in the afternoon, and be deemed the beneficial owner— and liable for taxes on any gains—in between.)

46.     A transfer of dematerialized shares is *enforceable* against the company and third parties after book entry in the relevant accounts.  There is also a legal doctrine that the transfer of ownership requires an individualization of the shares, *i.e.* that the securities account of the buyer has effectively been credited. In any event, the legal ownership of the dematerialized shares is to be considered transferred upon the book entry, which may take place on the date the parties have entered into the agreement to transfer shares.[22]   At the time of the book entry reflecting the purchase of shares, for purposes of Belgian tax law, the buyer is also the beneficial owner of any dividends associated with those shares.

---

[22] Art. 5:61 – 5:62 and 7:73 – 7:75 Company code. This was not explicitly determined in the former Company code applicable in the period 2012-2015, which was in force until 2019. But the legislature indicated that this addition in the new Company code is a codification of the previous already existing state of the law. See *Parl. St.* Chamber, DOC 54-3119/001, p. 150 and p. 218. On this, see *i.a.* Niels Rogge, 'Verpanding van financiële instrumenten', *OHRF* vol. 56 (2021) p. 37-41.

**Tiberghien** .
*Advocaten / Avocats / Lawyers*

47.     In the course of evaluating 276 Div applications, FPSF may request documentation—such as bank account statements and trade confirmations—that may reflect the purchase of securities and corresponding book entries.   In such case, FPSF relies on that documentation to evaluate the legal ownership of the relevant shares, which, in turn, can establish the beneficial owner who is eligible for the relevant refund.

48.     Accordingly, book entry is sufficient to demonstrate beneficial ownership under Belgian tax law.

+++++++++++++++++++++++

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of February 2022, in Brussels, Belgium.



Bernard Peeters

Annexes:


1. CV Bernard Peeters

2. Blank 276 Div form

3. Explanatory note to the 276 Div form