UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>KINGDOM OF BELGIUM,<br>FEDERAL PUBLIC SERVICE FINANCE<br>PENSION PLAN LITIGATION | DECLARATION OF PATRICK WAETERINCKX<br><br>Lead Case: No. 21 Civ. 6392 (JGK)<br>Member Cases:<br>　No. 21 Civ. 6392 (JGK)<br>　No. 21 Civ. 6399 (JGK)<br>　No. 21 Civ. 6402 (JGK)<br>　No. 21 Civ. 6404 (JGK)<br>　No. 21 Civ. 6405 (JGK)<br>　No. 21 Civ. 6407 (JGK)<br>　No. 21 Civ. 6408 (JGK) |

### DECLARATION OF PATRICK WAETERINCKX

I, Patrick Waeterinckx, state the following:

1.     I have written this legal opinion at the request of Defendants in the above-captioned litigation for submission to the United States District Court for the Southern District of New York.

2.     The opinion rendered herein is a legal opinion on legal matters that I am qualified to give based on my expertise in Belgian law. My compensation, which is paid on a per-hour fee basis, does not depend in any way on the opinion I have rendered or the outcome of this case.

3.     I have based this declaration solely on official law, rules, and documents, without regard to any other fact of which I may have been informed by Defendants or any other person. I have provided herein the original text and English translations of the key Belgian laws and regulations addressed in this declaration.

1

I. **Professional Qualifications**

4.  I am the founder and senior partner of Waeterinckx Attorneys in Antwerp, Belgium. I and my colleagues at Waeterinckx Attorneys have extensive experience in Belgian criminal law and have advised companies and their principals in a broad range of corporate white collar matters.

5.  I have a Master's degree in Law from the Vrije Universiteit Brussels ("Brussels VUB University"), awarded magna cum laude, and a degree in risk management from the Antwerp Management School, awarded summa cum laude. After working for over a decade at the Gendarmerie (*i.e.*, the Belgian Federal Police) from 1985 to 1997, and as an in-house counsel in the banking sector from 1997 to 1999, I joined the Brussels Bar in 1999 where I practiced law at the Bogaert & Vandemeulebroeke firm and the Lawfort firm (former legal firms associated with PricewaterhouseCoopers). In 2003, I became a member of the Antwerp Bar where I first worked for Lawfort, Van Goethem Attorneys; followed by the Antaxius firm; and later Monard Law, as a partner. In September 2016, I started my own law office, Waeterinckx Attorneys, a boutique law firm specializing in business criminal law.

6.  I serve as a Lecturer in Criminal Law and Procedure at the Brussels VUB University. I am also a registered fraud auditor (Institute of Fraud Auditors, IFA). Since 2016, I have held a certificate in "Special Training in Supreme Court Procedure in Criminal Cases" issued by the Flemish Bar Association.[1] I am identified in ExpertGuides as an expert in "White Collar Crime" for Belgium. I am the author of several articles in a number of legal journals and compilations and serve as a regular speaker at Belgian legal seminars. I am also a member of the editorial board of legal journals in Belgium, including: Nullum Crimen (a Belgian legal journal

---

[1] Orde van Vlaamse Balies (OVB).

covering criminal law) and the bilingual[2] Tijdschift voor Belgisch Handelsrecht/Revue de droit Commercial Belge (the Belgian Commercial Law Review).  For the latter journal I am coordinator of the Business Criminal Law section.

7.  Based on my more than twenty years of experience with white collar matters in Belgium as a lawyer, and more than thirty years of experience with criminal matters in general (including my decade of service with the Belgian Federal Police), I am familiar with the laws and rules applicable to Belgian government agencies, including those that govern the Federal Public Service Finance (the "FPSF"), the agency tasked with administering and enforcing Belgium's tax laws.

8.  I am also familiar with the Belgian statute of limitations in both criminal and civil cases, both as an attorney and as an academic.  As an attorney who specializes in white collar criminal matters, I am often confronted with statute of limitations questions, and I often examine statute of limitations issues in the coursework I teach as a lecturer in criminal procedure at Brussels VUB University.

## II.  FPSF's Investigative Powers and Authority

9.  One of the key duties of the FPSF is to oversee the timely and proper levying, collection, and recovery of income taxes.[3]  To determine the existence and amount of the tax debt, as well as to establish violations of the provisions of the Belgian Income Tax Code 1992 ("BITC")

---

[2]   Dutch and French.

[3]   Mission, Vision, and Values, Federal Public Service Finance, https://finance.belgium.be/en/about_fps/mission_vision_values/our_ambition_for_the_future (last visited, February 16, 2022).

3

or its implementing decrees, the FPSF may invoke any means of proof customarily permitted by law, including any official reports that it has drawn up, except for statements made under oath. *See* Art. 340, par. 1, BITC.  The official reports drawn up by the FPSF have evidentiary value until proof to the contrary is provided.  *See* Art. 340, par. 2, BITC.

10. The specialized Special Tax Inspectorate is part of the FPSF and its "mission is to fight against serious and organized tax evasion."[4] The fact that an alleged violation of the tax laws could be classified as fraud and, possibly, a criminal offense, does not affect the FPSF's authority to investigate the alleged violation for the purpose of timely and proper assessment, collection, and recovery of the tax.

11. In accordance with Article 172, paragraph 1 of the Belgian Constitution, no special treatment can be granted with regard to taxes.  This provision is an expression of the principle of equality and signifies that the FPSF is obliged to collect all legally owed taxes, and that it is therefore obliged to investigate any alleged violation of the tax laws, including fraud.  The Belgian Constitutional Court has ruled as follows with respect to FPSF's obligations under the Belgian Constitution: "The establishment of a tax assessment or the collection of a tax in the cases where

---

[4] Special Tax Inspectorate (STI), Federal Public Service Finance, https://finance.belgium.be/en/about_fps/structure_and_services/general_administrations/sti (last visited Feb. 24, 2022); *see also* Organization and Working of the Special Tax Inspectorate (ISI – BBI), Court of Audit, https://www.ccrek.be/EN/Publications/Fiche.html?id=4a3057da-cf85-40b5-a16b-584d9f706acd (last visited February 24, 2022); F. Philipsen and P. Sere, *La lutte contre la fraude fiscale*, in DE LA LUTTE CONTRE LA FRAUDE À L'ARGENT DU CRIME [FROM THE FIGHT AGAINST FRAUD TO THE MONEY OF CRIME]. 56, (ÉTAT DES LIEUX [STATE OF AFFAIRS], D. GRISAY ed., 2013).

such tax is legally owed is an obligation for the administration ensuring the equality of citizens under the tax laws." Constitutional Court (formerly named the Court of Arbitration), April 20, 2005, Judgment No. 72/2005, B.20 (Belg.).[5]

12. The FPSF has the authority to investigate the proper assessment and collection of taxes, as well as alleged violations of tax laws, for a period of three years starting on January 1 of the year following the year being examined. *See* Art. 333, par. 2, BITC. This period may be extended to seven years if the FPSF identifies indicia of possible tax evasion and provides written notice of these indicia to the taxpayer. *See* Art. 333, par. 3, BITC.

13. The FPSF has multiple investigative powers that are explicitly provided for in the BITC. The FPSF can exercise investigative powers with respect to the taxpayer and also with respect to possibly relevant third parties, including individuals, related entities, financial institutions, and certain public services/government agencies.

14. With respect to taxpayers, the BITC grants the following investigative powers to the FPSF:

    i. The power to audit all of the taxpayer's books and records that are necessary to determine the amount of taxable income, *see* Art. 315, BITC, as well as the power to hold these books and records if the FPSF believes that they are necessary to

---

[5] In the original French: L'établissement d'une cotisation ou la perception d'un impôt, dans les cas où l'impôt est dû conformément à la loi, constitue, dans le chef de l'administration, une obligation qui doit permettre de garantir l'égalité du citoyen devant la loi fiscale. Constitutional Court (formerly named the Court of Arbitration), April 20, 2005, Judgment No. 72/2005, B.20 (Belg.).

       determine the amount of taxable income of the taxpayer or third parties. *See* Art. 315(3), BITC.

  ii.     The power to inspect the books and records held by the taxpayer on a computer system or any other electronic device, as well as the power to obtain copies of that digital data. *See* Art. 315(2), BITC.

  iii.    The power to demand any information, verbally or in writing, from the taxpayer for the purpose of examining their tax situation. *See* Art. 316, BITC.

  iv.    The power to freely access the taxpayer's business premises in order to determine, among other things, the nature and importance of the activity there and to examine all books and records located in the aforementioned premises. *See* Art. 319, par.1, BITC.

With respect to third parties (i.e., parties other than the taxpayer under investigation) the 1992 Tax Code grants the following investigative powers to the FPSF:

  i.      Regarding a specific taxpayer, the power to collect written certificates, to hear third parties and to demand from third parties any information that the FPSF considers necessary to ensure the correct tax assessment. *See* Art. 322(1), par. 1, BITC.

  ii.     Under certain conditions and subject to following a specific procedure, the power to request any information that may be useful in determining the amount of the taxpayer's taxable income from banks, exchange offices, and credit and savings institutions. *See* Art. 322(2), BITC.

  iii.    The power to require that third parties, in respect of all or part of their operations or activities, submit information relating to any person or group of persons, even if not designated by name, with whom they have had a direct or indirect relationship by virtue of that operation or activity. *See* Art. 323, BITC.

    iv.       The power, subject to following a specific procedure, to hear third parties as witnesses regarding all acts and events of which they have knowledge and the determination of which may be useful for the application of the tax laws to the disputed events. *See* Art. 325 and 326, BITC.

    v.       The power, subject to the express authorization of the public prosecutor, to inspect and take copies of deeds, documents, registers, records or information relating to legal investigations and/or proceedings. *See* Art. 327(1), BITC.[6]

There is a broad legal basis for exchanging information between different fiscal administration units of the FPSF. All information lawfully obtained, directly or indirectly, by a tax official in the exercise of their duties may be relied upon by the FPSF for the detection of any amount due under the tax laws. *See* Art. 336, BITC. Accordingly, FPSF officials are required to make the information in their possession available to officials of other FPSF tax administration divisions. *See* Art. 335, par. 1, BITC.

---

[6] It should be specified here that the Belgian Supreme Court has ruled that reviewing a court case file does not, in essence, constitute an act of tax investigation within the meaning of Article 333 of the BITC. According to established Supreme Court case law, in that hypothesis, a prior notification of indications of tax evasion (which is necessary for extending the investigative period) is not necessary for consulting a criminal file after the expiry of the regular three-year investigation period. *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], September 2, 1999, F.96.0046.N (Belg.); Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], September 28, 2001, F.99.0146.N (Belg.); Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], June 27, 2002, F.00.0020.N (Belg.).

15. In addition, the FPSF also has broad authority to cooperate internationally with other tax authorities and law enforcement agencies. For example, Article 25.4 of the double taxation treaty between Belgium and the United States of America of November 27, 2006 ("Double Taxation Treaty"),[7] provides for the exchange of information and administrative assistance. When Belgium requests information from the United States in accordance with Article 25.4 of the treaty, the United States must use the means at its disposal to obtain the requested information, even if it does not need such information for its own purposes.[8] In accordance with Article 25.4, such information includes information held by banks, other financial institutions, or a proxyholder or a person acting in the capacity of a representative or fiduciary. (Double Taxation Treaty, Art. 25.5.)

---

[7] Convention Between the Government of the United States of America and the Government of the Kingdom of Belgium for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Nov. 27, 2006, https://www.irs.gov/businesses/international-businesses/belgium-tax-treaty-documents (last visited Feb. 24, 2022) ("Double Taxation Treaty").

[8] The treaty provides: "If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall use its information gathering measures to obtain the requested information, even though that other State may not need such information for its own purposes. The obligation contained in the preceding sentence is subject to the limitations of paragraph 3 but in no case shall such limitations be construed to permit a Contracting State to decline to supply information because it has no domestic interest in such information." Double Taxation Treaty, Art. 25.4.

16. In Belgium, there is no legal rule or any policy requirement that prevents the FPSF from conducting investigations into tax-relevant events (including tax fraud of course) on the basis that the same underlying facts are being investigated as part of a criminal investigation.[9] Supervising the timely and proper levy, collection, and recovery of taxes remains a core function of the FPSF, even when there is a criminal investigation into the same events. In fact, as noted above, the proper collection of legally owed taxes is a constitutional and statutory *obligation* for the FPSF. Thus, even when a criminal investigation is ongoing, the FPSF is required to conduct its own investigation in order to determine the correct assessment and collection of any legally owed taxes.

### III. Belgian Statute of Limitations for Civil Fraud

17. I have also been asked to address the statute of limitations applicable to a civil fraud claim under Belgian law.

*A. Legal framework applicable to Belgian civil claims sounding in fraud.*

18. As an initial matter, Belgian law does not formally recognize a distinct civil claim for "fraud" in civil court. However, that does not mean it is impossible to bring what is essentially a civil fraud claim in Belgium. According to Article 1382 of the (old) Belgian Civil Code, any intentional act, or any act that is the result of carelessness, negligence or imprudence causing prejudice (*i.e.*, injury), gives rise to damages that may be sought in civil court. *See* Art. 1382,

---

[9] Under Belgian law, there is a legal framework governing the double punishment for the same events, *i.e.,* under administrative law by the FPSF on the one hand and under criminal law by prosecutors on the other. However, this legal framework only relates to the punishment of tax fraud and not the assessment and collection of taxes.

9

Belgian Civ. Code (old).[10]  The Belgian Supreme Court (formally known as the Court of Cassation) has defined the scope of actionable conduct as: any act or omission that would not have been performed by an ordinarily prudent and foresighted person *(bonus pater familias)*[11] in the same situation.  *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], June 5, 2003, C.01.0252.F/1 (Belg.).  Consequently, under Belgian law, prejudice caused by deceit—which presupposes an intentional unlawful act—*outside* the context of a contract gives rise to extra-contractual tort liability under Article 1382 of the Belgian Civil Code.

19. In a civil fraud action seeking damages based on extra-contractual tort liability, the limitations periods provided for in Article 2262bis of the Belgian Civil Code apply.  Section 1 of this article provides that:

Dutch:  *§ 1. Alle persoonlijke rechtsvorderingen verjaren door verloop van tien jaar.*

*In afwijking van het eerste lid verjaren alle rechtsvorderingen tot vergoeding van schade op grond van buitencontractuele aansprakelijkheid door verloop van vijf jaar vanaf de dag volgend op die waarop de benadeelde kennis heeft gekregen van de schade of van de verzwaring ervan en van de identiteit van de daarvoor aansprakelijke persoon.*

---

[10]  Unless otherwise noted, all citations to the Belgian Civil Code refer to the "old" code that is still in force in multiple areas of Belgian procedural and substantive law.

[11]  The Latin term *bonus pater familias*, which translates to "good family father," refers to a standard of care in civil law that is analogous to the "reasonable man" standard in the Anglo legal tradition.

*De in het tweede lid vermelde vorderingen verjaren in ieder geval door verloop van twintig jaar vanaf de dag volgend op die waarop het feit waardoor de schade is veroorzaakt, zich heeft voorgedaan.*

French:  *§ 1er. Toutes les actions personnelles sont prescrites par dix ans.*

*Par dérogation à l'alinéa 1er, toute action en réparation d'un dommage fondée sur une responsabilité extra-contractuelle se prescrit par cinq ans à partir du jour qui suit celui où la personne lésée a eu connaissance du dommage ou de son aggravation et de l'identité de la personne responsable.*

*Les actions visées à l'alinéa 2 se prescrivent en tout cas par vingt ans à partir du jour qui suit celui où s'est produit le fait qui a provoqué le dommage.*

English translation:  *§ 1.  All personal claims will be subject to a statute of limitations of ten years. Notwithstanding section 1, all claims seeking damages based on extra-contractual liability will be subject to a statute of limitations of five years from the day following the day on which the prejudiced party became aware of the prejudice or its aggravation and of the identity of the person liable for it.*

*In any event, the claims referred to in subsection 2 will lapse after twenty years from the day following that on which the event causing the prejudice occurred.*

20.     In other words, Article 2262bis of the Belgian Civil Code provides two limitations periods for claims seeking damages based on extra-contractual liability, both of which I discuss below.

11

### B. *Contingent five-year statute of limitations for civil claims sounding in fraud.*

21.     The first limitations period is a contingent one that runs for five years from the day after the prejudiced party becomes aware of: (i) the prejudice or its aggravation, and (ii) the identity of the party causing the prejudice. *See* Code Civil, Art. 2262bis (Belg.). Both conditions are required before the five-year period begins to run. *See* Cour d'appel de Liège [Liège Court of Appeal], May 4, 2018, 2017/RG/126 (Belg.).

22.     The Belgian Supreme Court has ruled that "becoming aware," which is considered as the start of the five-year limitations period, is becoming aware of all the information necessary to bring a liability claim. According to the Court, the specific prejudiced party must be actually aware of the prejudice and of the identity of the person who can be held liable for it. This implies that the prejudiced party is able to establish a causal link between the event causing the prejudice and the prejudice. *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], September 5, 2014, C.12.0605.N (Belg.); Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], March 30, 2017, C.16.0111.F and C.16.0286.F (Belg.). Actual awareness does not mean, however, that the prejudiced party must know with absolute certainty all the information to bring a liability claim. If the prejudiced party knows enough to establish, with a sufficient degree of probability, a causal link between the defendant's conduct and the prejudice suffered, the limitations period begins to run. *See* Hof van beroep [Court of Appeal], Brussels, January 30, 2012, 2001AR920 (Belg.); *see also* I. Claeys, *Overzicht van rechtspraak bevrijdende verjaring (1992-2017*) [Overview of case law statute of limitations (1992-2017)] at 740–43 (2018)). The fact that an ordinarily prudent person in the same circumstances could reasonably have become aware of all the information necessary to bring a liability claim is *not* sufficient to trigger the five-year statute of limitations. *See* Hof van Cassatie van België/Cour

de cassation de Belgique [Court of Cassation], April 26, 2014, C.11.0143.N; *see also RCJB* 2015, issue 1, 55, obs. P. Wery; *RW* 2012-13, vol. 24, 944 obs. G. Velghe; *TBBR* 2013, vol. 1, 50, obs. E. Verjans.

### C. Absolute twenty-year statute of limitations for civil claims sounding in fraud.

23. In addition to the contingent five-year limitations period, a claim cannot be brought more than twenty years from the day after the event causing prejudice. This limitations period applies even if, at that time, less than five years has elapsed since the day following that on which the prejudiced party became aware of the prejudice or its aggravation and of the identity of the party causing the prejudice.

### D. Interruptions and suspensions of the civil limitations period.

24. The contingent five-year limitations period and absolute twenty-year limitations period for an extra-contractual tort claim can be subject to interruption and suspension under Belgian law in certain circumstances. When interrupted, a new limitations period that is equal to the original statute of limitations begins to run. *See* H. De Page, *Traité élémentaire de droit civil belge*, Tôme VII, Les privilèges – La prescription [Elementary Treatise of Belgian civil law, volume VII, Privileges – Limitations periods], Brussels, Bruylant at 1080 (1957); C. Lebon, *Stuiting, schorsing en verlenging van verjaringstermijnen* [Interruption, suspension and extension of limitations periods], in I. Claeys, VERJARING IN HET PRIVAATRECHT. WEET DE AVOND WAT DE OCHTEND BRENGT [LIMITATIONS PERIODS IN CIVIL LAW. DOES THE EVENING KNOW WHAT THE MORNING WILL BRING?] 87(Mechelen, Kluwer, 2005). If the limitations period is merely suspended, the limitations period is paused until the suspension ends, but it is not restarted. *See* H. De Page, *Traité élémentaire de droit civil belge*, Tôme VII, Les privilèges – La prescription [*Elementary Treatise of Belgian civil law*, volume VII, Privileges – Limitations periods], Brussels,

Bruylant, 1957, p. 1115-1116; C. Lebon, *Stuiting, schorsing en verlenging van verjaringstermijnen [Interruption, suspension and extension of limitations periods]*, in I. Claeys, VERJARING IN HET PRIVAATRECHT. WEET DE AVOND WAT DE OCHTEND BRENGT *[*LIMITATIONS PERIODS IN CIVIL LAW. DOES THE EVENING KNOW WHAT THE MORNING WILL BRING*]* 88 (Mechelen, Kluwer, 2005).

25. The only basis relevant here for interruption of the statute of limitations applicable to extra-contractual tort liability is Article 2242(1) of the Belgian Civil Code. Under that provision, the statute of limitations is interrupted by a civil summons.[12] *See* Civil Code, Art. 2242(1) (Belg.). The interruption applies until the court issues a final decision. *Id.* The initiation of a civil case by the civil courts also serves as a de facto suspension of the limitations period. *Id.* In other words, if the summons by a claimant was issued in due time, his claim cannot be time-barred anymore.

      E. *Applicability of the criminal statute of limitations.*

26. If the events underlying a civil fraud claim also constitute a crime under Belgian law, Article 26 of the Preliminary Title of the Belgian Code of Criminal Procedure provides that the limitations period for the civil claim cannot expire before the criminal claim:

> Dutch: *De burgerlijke rechtsvordering volgend uit een misdrijf verjaart volgens de regels van het Burgerlijk Wetboek of van de bijzondere wetten die van toepassing zijn op de rechtsvordering tot vergoeding van schade. Zij kan echter niet verjaren vóór de strafvordering.*

---

[12] The issuance of a summons by a claimant in a civil case is equivalent to filing a complaint in civil court in the United States. The issuance of a summons by the Crown or the plaintiff before a criminal court equals an indictment in criminal court in the United States.

14

> French: *L'action civile résultant d'une infraction se prescrit selon les règles du Code civil ou des lois particulières qui sont applicables à l'action en dommages et intérêts. Toutefois, celle-ci ne peut se prescrire avant l'action publique."*
>
> English translation: *Civil claims arising from a crime shall become time-barred according to the rules of the Civil Code or the special laws applicable to the legal action for damages. However, they cannot become time-barred before the criminal claim.*
>
> Article 26, Prel. Title, Belgian Code of Criminal Procedure.

27. Accordingly, claims for extra-contractual tort damages based on facts constituting a crime are time-barred according to the limitations periods of Art. 2262bis of the Belgian Civil Code, unless the limitations period for the crime constituting those events would exceed five years, in which case the limitations period is extended to the date when the crime becomes time-barred. *See* M. Franchimont, A. Jacobs and A. Masset, Manuel de procédure pénale 241 [Criminal Procedure Manual], (Brussels, Larcier, 4th ed. 2012); R. Verstraeten, Handboek strafvordering 229 [Criminal Procedure Manual] (Antwerp, Maklu, 5th ed. 2012). This possible extension of the limitations period applicable to claims for extra-contractual damages that are based on underlying facts constituting a crime applies even if the claim is brought before the civil courts.[13]

---

[13] It should be noted that under Article 4 of the Preliminary Title of the Code of Criminal Procedure, victims of a crime can choose to have their claim for damages based on a crime adjudicated along with the crime by the criminal courts, or they can bring that claim before the civil courts separately. It would therefore be impractical for the same claim to be subject to a

28.     Indeed, the Belgian Court of Cassation has confirmed that the criminal limitations period applies to civil claims for extra-contractual damages based on events that constitute a crime, even if a criminal prosecution has not been initiated.  *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], June 2, 2017, C.16.0517.N (Belg.).  The civil court must independently determine whether the events constituting the basis of the civil claim are covered by criminal law and determine the statute of limitations for the applicable crime.  *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation] February 9, 2009, S.08.0067.F (Belg.); Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], October 25, 2004, S.99.0190.F (Belg.).  The civil court will only take into account the limitations periods of art. 2262bis of the Belgian Civil Code if the crime underlying a civil claim for damages has already been finally adjudicated by the criminal courts at the time the civil claim is filed.  *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], February 22, 2013, C.12.0319.N (Belg.).

29.     The generally applicable statute of limitations for a criminal fraud claim is five years, which runs from the date the crime was committed.  Art. 21(4) of the Preliminary Title of the Code of Criminal Procedure.  This five-year limitations period is the minimum applicable statute of limitations.  Depending on the facts of the case, the limitations period may be longer, or the commencement of the limitations period may begin at a later date (*e.g.* if a false document was used to keep the fraud hidden).  *See* Criminal Code, Art. 197 (Belg.).

   F.  *Interruptions and suspensions of the criminal statute of limitations*

30.     The generally applicable limitations period is interrupted during the first five-year

---

different limitations period depending on whether it was brought before the criminal courts or the civil courts.

period—which immediately triggers a new five-year period—by *any* act of investigation or prosecution by a judicial authority (*i.e.* the police, the public prosecutor, and/or the criminal court). *See* M.A. Beernaert, H. Bosly and D. Vandermeersch, DROIT DE LA PROCÉDURE PÉNALE 209 [LAW OF CRIMINAL PROCEDURE] (Bruges, la Charte, 8th ed., 2017); R. Verstraeten, HANDBOEK STRAFVORDERING 143-149 [CRIMINAL PROCEDURE MANUAL], (Antwerp, Maklu, 5th ed., 2012)). This means that the judicial authorities have a period of five years from the commission of a criminal fraud to discover said criminal fraud and to launch the criminal investigation and prosecution. If a criminal investigation or prosecution is initiated within five years, the judicial authorities have a maximum period of ten years[14] from the commission of the criminal fraud to bring that fraud to a final criminal judgment.

31.  In summary, the limitations period under Belgian law for a civil fraud claim is five years from the time of becoming aware of all the information necessary to bring a claim, with an absolute maximum of twenty years from the date of the event causing the prejudice. And if the events underlying the civil fraud claim constitute a crime, a separate five-year statute of limitations applies from the date the fraud was committed. This period is extended to a period of up to ten years from the date the criminal fraud was committed if the criminal investigation or prosecution began within five years of the criminal fraud. The civil fraud claim will only be time-barred upon the expiration of the longest possible statute of limitations applicable to a particular case.

**IV.   Aiding and Abetting Fraud Statute of Limitations**

   *A.  Generally applicable statute of limitations*

32.  Belgian law does not recognize a distinct civil damages claim for "aiding and

---

[14] As explained above, this may be extended by several different events or circumstances that trigger a suspension of the limitations period.

abetting" fraud.  However, this does not mean that "aiding and abetting" a fraud can never give rise to civil liability.  As indicated above in Paragraph 11, according to Article 1382 of the Belgian Civil Code, any intentional act, or any act that is the result of carelessness, negligence or imprudence causing prejudice, gives rise to damages.  Under Belgian law, the latter is assessed using the so-called "equivalence doctrine."  This doctrine means that a causal connection is deemed to exist if the prejudice as it occurred in the specific case would not have existed without the intentional act or carelessness, negligence or imprudence.  *See* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], June 26, 2008C.07.0272.N (Belg.); *see also* Hof van Cassatie van België/Cour de cassation de Belgique [Court of Cassation], October 1, 2019, P.19.0575.N (Belg.).  Thus, if the act of aiding and abetting (which implies intentional conduct) constitutes an unlawful act under Belgian law within the meaning of Article 1382 of the Belgian Civil Code, it will give rise to extra-contractual tort liability under that section.  In that case, the limitations periods of Article 2262bis of the Belgian Civil Code, discussed above in Paragraphs 19-23, would apply.

### B. Potential relevance of the criminal statute of limitations.

33. If the events underlying the civil claim constitute a crime, the statute of limitations provisions of the Criminal Code might also apply to an action seeking civil damages for assisting an alleged fraud.  The Belgian Criminal Code criminalizes providing assistance to the primary perpetrator of a crime during the preparation or execution of the crime.  *See* Criminal Code, Arts. 66-67 (Belg.).  Under Article 50 of the Belgian Criminal Code, these participants in a crime may also be ordered to pay damages for the prejudice/injury caused by the crime.  *See* Criminal Code, Art. 50 (Belg.).  The provision applies when the damages claim is brought before the civil court.  *See* T. Vansweevelt and B. Weyts, HANDBOEK BUITENCONTRACTUEEL

18

AANSPRAKELIJKHEIDSRECHT 839 [HANDBOOK OF EXTRA CONTRACTUAL LIABLITY LAW], (Antwerp, Intersentia, 2009).

34. The statute of limitations for criminally prosecuting assistance to a fraud is the same as that applicable to the fraud itself. *See supra* ¶¶ 26-29. Article 26 of the Preliminary Title of the Code of Criminal Procedure also applies to criminal participation in/assistance of a crime. *See supra* ¶ 26. Thus, the civil statute of limitations period for an aiding and abetting claim can also not expire before the applicable criminal limitations period expires. *See* Code of Crim. Pro., Art. 26, Prelim. Title (Belg.).

35. In summary, although aiding and abetting is not formally recognized as a discrete claim under Belgian law, the limitations periods applicable to a damages claim for assisting a fraud would be the same as the limitations period applicable to a primary fraud claim. This means that the statute of limitations under Belgian law is five years from the time of becoming aware of all the information necessary to bring the claim, with an absolute maximum limitations period of twenty years from the event causing the prejudice. If the events underlying the aiding and abetting claim include participation in a crime, a separate five-year statute of limitations applies from the date the criminal fraud was committed. This period is extended to a period of up to ten years from the date the criminal fraud was committed if an investigation or prosecution is initiated by law enforcement within five years of the fraud.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on February 25, 2022 in 82110 SAINTE-JULIETTE, France.

Patrick Waeterinckx

19