# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

KINGDOM OF BELGIUM,
FEDERAL PUBLIC SERVICE FINANCE
PENSION PLAN LITIGATION

Lead Case: No. 21 Civ. 6392 (JGK)
Member Cases:
    No. 21 Civ. 6392 (JGK)
    No. 21 Civ. 6399 (JGK)
    No. 21 Civ. 6402 (JGK)
    No. 21 Civ. 6404 (JGK)
    No. 21 Civ. 6405 (JGK)
    No. 21 Civ. 6407 (JGK)
    No. 21 Civ. 6408 (JGK)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY THE COURT'S JULY 5, 2023 ORDER FOR INTERLOCUTORY APPEAL AND TO STAY FURTHER PROCEEDINGS PENDING INTERLOCUTORY APPEAL**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

ARGUMENT ...................................................................................................................4

I.     This Court Should Certify An Interlocutory Appeal .........................................4

       A.    The Order Involves a Controlling Issue of Law ....................................4

       B.    There Is a Substantial Ground for Difference of Opinion Regarding Subject
           Matter Jurisdiction Pursuant to the Revenue Rule....................................5

            *1.    A Conflicting Ruling from the United Kingdom Supports Defendants'
                 Position.* ................................................................................8

            *2.    The Revenue Rule Implicates Challenging Issues of Sovereignty and
                 Separation of Powers Over Which There Is a Split in Authority.* ..............10

       C.    An Immediate Appeal May Materially Advance Termination of the Litigation...15

II.    This Court Should Stay All Proceedings In This Court Pending the Second Circuit's
       Decision ...........................................................................................16

CONCLUSION.................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
   268 F.3d 103 (2d Cir. 2001).................................................................................. *passim*

*Best v. BWIA West Indies Airways Ltd.*,
   581 F. Supp. 2d 359 (E.D.N.Y. 2008) ....................................................................12

*In re Duplan Corp.*,
   591 F.2d 139 (2d Cir. 1978)....................................................................................15

*European Community v. RJR Nabisco, Inc.*,
   424 F.3d 175 (2d Cir. 2005)...............................................................................11, 14

*European Community v. RJR Nabisco, Inc.*,
   355 F.3d 123 (2d Cir. 2004)....................................................................................14

*Ferring B.V. v. Allergan, Inc.*,
   343 F. Supp. 3d 284 (S.D.N.Y. 2018)....................................................................17

*Freytag v. C.I.R.*,
   501 U.S. 868 (1991)................................................................................................11

*In re Kingdom of Belgium Federal Public Service Finance Pension Plan*
   *Litigation*,
   No. 21-cv-6392, ECF No. 47 (S.D.N.Y. Dec. 18, 2021) ..........................................3

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990).....................................................................................1, 5

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ................................................................................17

*Mills v. Everest Reinsurance Co.*,
   771 F. Supp. 2d 270 (S.D.N.Y. 2009)................................................................5, 10

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir. 2002)......................................................................................16

*Republic of Colombia v. Diageo North America Inc.*,
   531 F. Supp. 2d 365 (E.D.N.Y. 2007) (*Republic of Colombia I*) .............................6

*Republic of Colombia v. Diageo North America Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) (*Republic of Colombia II*)...................... *passim*

*Republic of Colombia v. Diageo North America, Inc.*,
   No. 07-4076 (2d Cir. Jan. 18, 2008) ........................................................................7

*In re SKAT Tax Refund Scheme Litig.*,
   356 F. Supp. 3d 300 (S.D.N.Y. 2019) .......................................................7, 8, 9, 13

*Skatteforvaltningen v. Solo Capital Partners LLP*,
   [2022] EWCA Civ 234 (U.K.) .............................................................................5, 10

*Skatteforvaltningen v. Solo Capital Partners LLP*,
   [2021] EWHC 974 (Comm) (U.K.) ....................................................................1, 8, 16

*Sutherland v. Ernst & Young LLP*,
   856 F. Supp. 2d 638 (S.D.N.Y. 2012) ......................................................................17

*Wayman v. Southard*,
   23 U.S. 1 (1825) ........................................................................................................10

*Weber v. United States*,
   484 F.3d 154 (2d Cir. 2007) ................................................................................1, 16

*In re World Trade Ctr. Disaster Site Litig.*,
   503 F.3d 167 (2d Cir. 2007) ....................................................................................16

**Statutes**

28 U.S.C. § 1292(b) ..........................................................................................1, 4, 5, 15

**Other Authorities**

*Protocol Amending the Convention Between the Government of the United States
   of America and the Government for Japan for the Avoidance of Double
   Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on
   Income*, art. XIII .................................................................................................1, 12

*Convention Between the Government of the United States of America and the
   Government of the Kingdom of Belgium for the Avoidance of Double Taxation
   and the Prevention of Fiscal Evasion with Respect to Taxes on Income*, U.S.-
   Belg., art. 10, ¶ 4(b), Nov. 27, 2006, S. Treaty Doc. No. 110 .................................12

## PRELIMINARY STATEMENT

Congress enacted 28 U.S.C. § 1292(b) "to assure the prompt resolution of knotty legal problems." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007).  To that end, Section 1292(b) provides for immediate appeal of a non-final order where: (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion" on that question of law; and (3) immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Court's July 5, 2023 Opinion and Order ("Order") satisfies each of these requirements. The Court's holding that the revenue rule does not preclude the Court's subject matter jurisdiction in this consolidated action involves a controlling question of law, as reversal of the Court's order would terminate the action—and the application of the revenue rule is a pure question of law.  *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("question of law is 'controlling' if reversal of the district court's order would terminate the action"); *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 10 (E.D.N.Y. 2007) (*Republic of Colombia II*) ("Whether the revenue rule bars recognition, consideration and application of a foreign revenue law … is a pure question of law.").  There are substantial grounds for difference of opinion because, among other reasons, the Court decided a difficult issue of first impression for the Second Circuit, and it did so in a way that directly conflicts with the trial court's disposition in a similar case in the United Kingdom, portions of which are currently under review by the U.K. Supreme Court.  *See Skatteforvaltningen v. Solo Capital Partners LLP*, [2021] EWHC 974 (Comm) (U.K.) (appended hereto as Exhibit A).  The Court's Order also conflicts with the express position held by the United States executive branch, and ratified by the legislative branch in 2019, that assistance provided to a foreign sovereign in those instances where a U.S. person has filed a fraudulent request for a refund amounts to the collection of taxes and is, in fact, a revenue claim. *See Protocol*

1

*Amending the Convention Between the Government of the United States of America and the Government for Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income*, Japan-U.S., art. XIII, Nov. 6, 2003, T.I.A.S. 19-830 (2019) ("Japanese Protocol"). The Order thus implicates balance of powers considerations and risks usurping the authority of the executive branch. And an immediate appeal could materially advance the ultimate termination of the seven cases in this consolidated action because the Court does not have subject matter jurisdiction if the revenue rule bars recognition and application of Belgium's tax law. Further, the Court should stay the proceedings in this consolidated action before allowing FPSF to engage in costly and time-consuming discovery across several cases against individual defendants that may be nullified on appeal.

Accordingly, the Court should stay this consolidated action and certify the following question to the Second Circuit: "Whether the district court lacks subject matter jurisdiction under the revenue rule to entertain claims from a foreign sovereign seeking to recover money paid out by the relevant foreign tax administrative agency as tax refunds upon receipt and approval of requests for tax refunds, where those requests were purportedly fraudulent."

## STATEMENT OF FACTS

The Belgian government, pursuant to Belgian law, taxes dividends paid by Belgian companies at a 25% rate and collects these taxes through a withholding system. Xiphias Compl. (ECF No. 48) ¶ 27. When a dividend is paid, the Belgian company withholds 25% of the dividend payment and transfers that amount to the Federal Public Service Finance of the Kingdom of Belgium ("FPSF"), the agency of the Belgian government responsible for "the assessment and collection of Belgian taxes" and the Belgian equivalent of the United States Treasury Department, before paying the net remaining 75% of the dividend to its shareholders. *Id.* ¶ 1. Belgium and the United States have entered into a tax treaty that allows certain tax-exempt United States

residents—including pension plans—to receive a refund of the tax amount withheld on dividend payments. *Id.* ¶ 28. A pension plan must apply to FPSF, demonstrating proof of its tax-exempt status and ownership of a withheld dividend payment, to receive a tax refund. *Id.* The plan must be for the "exclusive benefit" of an entity's employees or their beneficiaries and must be funded by contributions from the employer or employees to qualify for a tax exemption. *Id.* ¶ 29.

In 2021, FPSF filed seven suits against Defendants in the Southern District of New York, claiming that from 2012 to 2015, Defendants "participated in a scheme to submit fraudulent tax refund claims to FPSF Belgium." Xiphias Compl. ¶¶ 31, 40. According to FPSF, the purported scheme "involved the registration of U.S. tax residents that would pose as qualified U.S. pension plans," which allegedly would "represent to FPSF Belgium that they were tax-exempt pension plans and, using misleading documentation, would represent that they owned shares in and received dividends from Belgian companies." *Id.* ¶ 31. In turn, these plans sought tax refunds from FPSF for amounts withheld from their purported dividend payments. *Id.* These cases were eventually consolidated for pretrial purposes only. *In re Kingdom of Belgium Federal Public Service Finance Pension Plan Litigation*, No. 21-cv-6392, ECF No. 47 (S.D.N.Y. Dec. 18, 2021).

On February 25, 2022, Defendants moved to dismiss the consolidated action, arguing among other things that this Court lacked subject matter jurisdiction over FPSF's claims because they ran afoul of the revenue rule, a common-law principle that courts may neither directly nor indirectly enforce the tax law of another sovereign. Mot. to Dismiss Mem. (ECF No. 79) at 1; *see Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 106, 130-31 (2d Cir. 2001). In a July 5, 2023 Order, this Court denied Defendants' motion to dismiss, concluding that "the revenue rule does not apply" because "FPSF does not seek to recover any lost tax revenue"

and that "[t]here is also no concern that Belgian tax law will be indirectly enforced in this case."

Order 12, 14.

## ARGUMENT

### I.      This Court Should Certify An Interlocutory Appeal

Revenue rule issues are particularly suitable for immediate appeal because they raise "close and difficult questions about which courts could disagree," do not require "further factual development and a complete record on appeal," and can usually end the litigation. *Republic of Colombia II*, 619 F. Supp. 2d at 10-11. Indeed, in *Republic of Colombia II*, a district judge in the Eastern District of New York certified a revenue rule issue for immediate appeal for these very reasons. *Id.* This Court should do the same.

### A.      The Order Involves a Controlling Issue of Law

The first criterion under Section 1292(b) is satisfied here. The Court's Order "involves a controlling question of law" because the application of the revenue rule presents a pure question of law that can entirely dispose of all cases in the consolidated action.

The application of the revenue rule in a given case is a question of law for the court. *See Republic of Colombia II*, 619 F. Supp. 2d at 10-11 (court's determination concerning whether "a foreign sovereign's claim calls upon a court to engage in the proscribed direct enforcement of a foreign revenue rule … is … a pure question of law"). Here, the Order's determination that the revenue rule does not apply because there is no "direct enforcement of Belgian tax law," and that "Belgian tax law will [not] be indirectly enforced in this case" because FPSF's claims do "not require an interpretation of Belgian tax law," present pure questions of law. Order 12, 14; *see Republic of Colombia II*, 619 F. Supp. 2d at 10 ("Whether the revenue rule bars recognition, consideration and application of a foreign revenue law … is a pure question of law."). These

determinations do not require "further factual development and a complete record on appeal" for resolution by the Second Circuit.  *Republic of Colombia II*, 619 F. Supp. 2d at 10.

The revenue rule issue is also "controlling."  28 U.S.C. § 1292(b).  In the Second Circuit, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Klinghoffer*, 921 F.2d at 24.  There is no dispute that all of FPSF's claims would not be cognizable in this Court if the revenue rule were found to apply, because the application of the revenue rule bears on the Court's subject matter jurisdiction to consider such claims.  *See* Order 11 ("The rule acts as a bar on the Court's subject-matter jurisdiction.").

**B.     There Is a Substantial Ground for Difference of Opinion Regarding Subject Matter Jurisdiction Pursuant to the Revenue Rule**

A substantial ground for difference of opinion may be demonstrated "by a showing that (1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit."  *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 274 (S.D.N.Y. 2009).  Both criteria are satisfied here.  First, there is conflicting authority as to the application of the revenue rule in this context.  On nearly identical facts, a trial judge in the United Kingdom applying the same body of law reached precisely the opposite conclusion, dismissing claims brought by the tax authority of the Kingdom of Denmark on the basis of the revenue rule. Portions of that decision were challenged on appeal, and the intermediate court of appeals reversed, even as it acknowledged that the trial court had issued a "closely-reasoned and comprehensive judgment" and that there was "no English authority directly on point."  *Skatteforvaltningen v. Solo Capital Partners LLP*, [2022] EWCA Civ 234 (U.K.).  That case is now pending before the Supreme Court of the United Kingdom.  Even in the absence of what amounts to a worldwide circuit split, however, the difficulty and novelty of the issues presented in this case warrant interlocutory appeal.  The Order also implicates critical issues of sovereignty, comity across

5

nations, and separation of powers, particularly because the Order conflicts with the position of the executive branch that assistance to a foreign sovereign to recover fraudulent claims for refund constitutes the collection of taxes.

Instructively here, another district court in the Second Circuit certified for interlocutory appeal a similar order denying a motion to dismiss. In *Republic of Colombia v. Diageo North America Inc.*, 531 F. Supp. 2d 365 (E.D.N.Y. 2007) (*Republic of Colombia I*), the Colombian government brought suit against several corporations, arguing that they were involved in a money laundering exercise with narcotics traffickers in which the corporations helped the traffickers convert U.S. dollars into Colombian pesos to avoid Colombian tariffs and taxes. *Id.* at 377-79. The district court held that the Colombian government's claims for taxes and other damages suffered in the government's sovereign capacity, as well as its claims for damages suffered in its commercial capacity resulting from the defendants' tax evasion, were barred by the revenue rule. *Id.* at 399. The court also held that the Colombian government's claims for damages suffered in its commercial capacity resulting from the defendants' money laundering were not barred by the revenue rule. *Id.*

The defendants petitioned the district court to certify its order for immediate appeal, which the district court granted. *Republic of Colombia II*, 619 F. Supp. 2d at 9. In determining that there was a substantial ground for difference of opinion, the district court stated,

> The Second Circuit has "note[d] that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor* [*v. BOT Fin. Corp.*], 79 F.3d [281,] 284 [(2d Cir. 1996)]. However, this element is satisfied where the "issues are difficult and of first impression." … Several of the issues addressed in the Order were close and difficult questions about which courts could disagree. The revenue rule … issue [was] very difficult. This largely results from the fact that there are so few decisions considering [this] doctrine[]. If there were numerous published decisions addressing [this] doctrine[] in a variety of contexts, the doctrine[] would be better developed, and it may have [been] much easier to apply them in this case.

> In the Order, however, the court was required to consider not just questions of first impression with respect to [this] doctrine[], but the court had to address significant legal and policy concerns that do not appear to have been considered in other revenue rule … decisions.  The novelty and complexity of the issues presented by the revenue … rule[] motions give rise to a substantial ground for disagreement as to how these issues should be applied in this case.

*Id.* at 11.[1]

Such is the case here.  In addition to the general scarcity of revenue rule precedent in the Second Circuit, the application of the revenue rule in this consolidated action would present an issue of first impression at the court of appeals.  There is also a notable dearth of applicable case law at the district level, as evidenced by this Court's extensive reliance on *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019), to conclude that the revenue rule did not apply here.  *See* Order 12-23.  There appears to be no appellate authority in the United States addressing the applicability of the revenue rule in the context of a tax withholding system, or involving requests to "reclaim" withheld taxes, or to address the application of the revenue rule to purportedly fraudulent returns.  The precedents (from both the United States and the United Kingdom) cited by the parties and by the Court in the Order involved efforts by a foreign sovereign to collect unpaid tax revenue, including by fraud or evasion.  As stated in *SKAT*: "Tax evasion is

---

[1] The Second Circuit did not accept the appeal for interlocutory review, stating only that "an immediate appeal is unwarranted."  *See Republic of Colombia v. Diageo N. Am., Inc.*, No. 07-4076 (2d Cir. Jan. 18, 2008).  The court of appeals' unreasoned denial does not undermine the district court's thoughtful and fully reasoned order.  The fact that the Second Circuit has provided no guidance on the Revenue Rule in the intervening fifteen years only underscores the need for appellate review in this case.

a crucial ingredient in cases barred by the revenue rule in this Circuit."  And the plaintiff "does not

seek[] to recover [any] lost tax revenue."  356 F. Supp. 3d at 311.

Subsequent to *SKAT*, however, a ruling was issued in a substantially similar case involving

SKAT in the United Kingdom that specifically determined that fraudulent requests for refunds of

taxes fall within the revenue rule, and a U.S. tax treaty (ratified and enacted into law on August

30, 2019) makes it clear that the executive and legislative branches have determined that an attempt

to recover fraudulent requests for refunds constitutes the collection of taxes on behalf of a foreign

sovereign.

Additionally, the "novelty and complexity" of the revenue rule issues presented in this case

further demonstrate that there is a substantial ground for a difference of opinion.

> 1.  ***A Conflicting Ruling from the United Kingdom Supports Defendants'***
>     ***Position.***

A trial judge in the United Kingdom issued a ruling in a similar case that conflicts with the

result the Court reached here and fully supports Defendants' position.  In *Skatteforvaltningen v.*

*Solo Capital Partners LLP*, [2021] EWHC 974 (Comm) (U.K.) ("RR Order"), the Danish national

tax authority, Skatteforvaltningen (or SKAT) brought an action in the United Kingdom against

numerous defendants claiming "to have been induced by misrepresentations, over a three-year

period from August 2012 to July 2015, to pay out as tax refunds it was not liable to pay, over DKK

12.5 billion (c.£1.5 billion)."  *Id.* ¶¶ 1-2.  Specifically,

> the case concerns Danish withholding tax ('WHT') deducted at source by Danish
> companies because under Danish tax law they had to pay SKAT 27% of the
> declared dividend.  SKAT maintains a system for processing and paying claims for
> WHT refunds to which foreign (non-Danish) resident parties may be entitled under
> double taxation agreements ('DTAs') concluded by it, including DTAs particularly
> relevant to this litigation with the USA and Malaysia.

*Id.* ¶ 6.  SKAT asserted that it received "thousands of WHT refund claims that were not valid claims" and thus sought "the return of amounts it says it was wrongly induced to pay out as tax refunds."  *Id.* ¶ 8.

Defendants in those cases sought to have the cases dismissed on the basis of the revenue rule, and, following argument and presentations from counsel, the trial court held that the revenue rule applied.  In particular, Justice Baker, of the Commercial Court of the Business and Property Courts of England and Wales, held that the revenue rule barred the court from hearing SKAT's claims, concluding that the Danish WHT Act "is at the heart of SKAT's case.  It provides the foundation for all of SKAT's claims, as pleaded, without reliance on which none of SKAT's claims could exist or be formulated."  RR Order ¶ 76.  Because the WHT Act provided the foundation for SKAT's claims, Justice Baker rejected SKAT's argument that the defendants' actions were akin to "a theft or robbery of cash from a SKAT vault."  *Id.* ¶ 83.  In Justice Baker's view, SKAT's pursuit to "vindicate its right … to retain Danish company dividend tax collected by way of WHT" was an "indirect[]" attempt "to enforce Denmark's underlying sovereign right, given effect by the WHT Act, to tax Danish company dividends," and thus ran afoul of the revenue rule.  *Id.* ¶ 94; *see id.* ¶¶ 118-20.

Justice Baker's decision in the United Kingdom is at odds with the decisions of this Court. While Justice Baker concluded that the revenue rule bars SKAT's claims, Judge Kaplan reached the opposite conclusion in *SKAT* (356 F. Supp. 3d at 308-09), which presented essentially identical factual allegations.  That Justice Baker issued his decision from the Commercial Court of London does not diminish the significance of the difference in authority here:  the British court cited American legal authority both to define the meaning of the revenue rule (*see* RR Order ¶ 15 (quoting *Moore v. Mitchell*, 30 F.2d 600, 604 (2d. Cir 1929) (L. Hand, J.)), and throughout its

analysis (*id.* ¶ 68 (quoting *Regierungspraesident Land Nordrhein-Westfalen v Rosenthal*, 17 A.D.2d 145, 232 N.Y.S.2d 963 (Sup. Ct. App. Div. 1962)).

Because this Court concluded that *SKAT* was "markedly similar" to this case, Order 12, and relied upon it as the primary authority in determining that the revenue rule did not apply, *see id.* at 12-23, *Skatteforvaltningen* is also directly in conflict with the outcome the Court reached here.  *See Mills*, 771 F. Supp. 2d at 274 (substantial ground for difference of opinion "may be met by a showing that … there is conflicting authority on an issue").

The subsequent procedural history of Justice Baker's decision reinforces the merit of immediate appellate review here.  An intermediate appeals court reversed Justice Baker's decision as to some defendants (*Skatteforvaltningen v. Solo Capital Partners*, [2022] EWCA Civ 234 (U.K.)), but the case is now pending before the Supreme Court of the United Kingdom, which granted review of Justice Baker's decision.  Moreover, SKAT did not even seek appellate review of Justice Baker's conclusion that the revenue rule bars its claims against a financial custodian (ED&F Man) that SKAT did not accuse of fraud.  But Justice Baker did not view the allegation of fraud as relevant to his analysis (*see* RR Order ¶ 30), meaning that at least as to certain defendants, his decision remains controlling law.  All of this only serves to underscore the complexity and significance of cases involving the application of the revenue rule.

2. ***The Revenue Rule Implicates Challenging Issues of Sovereignty and Separation of Powers Over Which There Is a Split in Authority.***

The revenue rule also implicates complex sovereignty and separation-of-powers questions about which branch of government should engage in the enforcement of another sovereign's tax laws.  *See Wayman v. Southard*, 23 U.S. 1, 46 (1825) (separation-of-powers issues are the "subject of delicate and difficult inquiry").  As the Court aptly noted in its Order:

> [P]rincipal concerns animating the revenue rule include "respect for sovereignty, concern for judicial role and competence, and separation of powers."  *Canada*, 268

F.3d at 109.  This is because "policy complications and embarrassment may follow
when one nation's courts analyze the validity of another nation's tax laws," and
because "the executive branch, not the judicial branch, should decide when our
nation will aid others in enforcing their tax laws." *Eur. Cmty. v. RJR Nabisco, Inc.*,
424 F.3d 175, 180 (2d Cir. 2005).

Order 11.  The significance and complexity of these issues are best resolved by a precedential

ruling in the Second Circuit to ensure a uniform response to a weighty issue that risks the judiciary

"aggrandizing its power at the expense of [the executive] branch."  *Freytag v. C.I.R.*, 501 U.S.

868, 878 (1991).  "In this area of foreign relations policy where the political branches have

primacy, courts must be wary of intruding in a way that undermines carefully conceived and

negotiated policy choices."  *Canada*, 268 F.3d at 119.

Indeed, the Second Circuit has held that, "with regard to the domestic collection of foreign

taxes … , the *political branches* of our government have consistently acted on behalf of the United

States in establishing and managing the nation's relationships with other countries."  268 F.3d at

115 (emphasis added).  To that end, the executive and legislative branches "have clearly expressed

their intention to define and limit the parameters of any assistance given with regard to the

extraterritorial enforcement of a foreign sovereign's tax laws."  *Id.*  Courts must therefore respect

the carefully created parameters established by the political branches of our government and

"abstain from assisting foreign sovereign plaintiffs with extraterritorial tax enforcement" unless

the U.S. government has entered into a treaty with the foreign sovereign to assist with the particular

enforcement sought.  *Id.*

A taxation treaty between the United States and Japan makes clear that the United States

executive and legislative branches consider attempts to recover fraudulent claims for refunds

(whether or not any tax was due) as the collection of foreign tax revenue, thus establishing a clear

difference of opinion.  This difference became only apparent only after the decision in *SKAT*, as

the treaty was not ratified until August 30, 2019.  The treaty also demonstrates that the cross-

border enforcement of cases just like this is a matter to be negotiated between executives, not to be decided by the judicial branch of its own accord. The United States' treaty with Japan specifically provides that the United States will provide tax collection assistance in the United States and against United States citizens or nationals related to "a fraudulent claim for refund." Japanese Protocol at art. XIII 2(b)(i). No distinction is made between taxes that have been evaded or underpaid, on the one hand, and refunds that have been paid out due to fraud, on the other—all are considered "revenue claims."

And whereas the Japanese Protocol explicitly defines tax collection assistance to *include* fraudulent claims for refunds, no other U.S. taxation treaty *excludes* fraudulent claims for refunds in its definition of tax collection assistance or revenue claims, including the treaty between the U.S. and Belgium. *See Convention Between the Government of the United States of America and the Government of the Kingdom of Belgium for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income*, U.S.-Belg., art. 10, ¶ 4(b), Nov. 27, 2006, S. Treaty Doc. No. 110 ("Treaty"). As taxation treaties hold the weight of federal law, the inclusion (or exclusion) of a provision concerning collection assistance for fraudulent claims is binding on the U.S. government and—by extension—on the courts. *See Best v. BWIA West Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008) (citing *Comm. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 456-57 (2d Cir. 2003)) (U.S. treaties are "considered federal law for subject matter jurisdiction purposes and [are] the supreme law of the land"). And because the Japanese Protocol contains the *only* statement on fraudulent claims for foreign tax refunds in any U.S. taxation treaty or provision of federal law, it is inescapable that, under U.S. law, a claim concerning a fraudulent claim for a foreign tax refund is a claim for the collection of foreign tax revenue and is therefore barred by the revenue rule. Thus, by determining that the fraudulent

claims for refund sought here by FPSF do not contravene the revenue rule and are cognizable in U.S. federal court absent a treaty provision to provide collection assistance for fraudulent claims, the Order runs the risk of upsetting the "carefully conceived and negotiated policy choices" of the political branches of our government in an area over which those branches, not the judiciary, have "primacy." *Canada*, 268 F.3d at 119. The risk of encroaching on the territory of the political branches persists even where, as here, the plaintiff sovereign artfully recasts its claim to recoup lost tax revenue under its own tax laws as a claim for fraud under United States law.

The pitfalls of accepting a foreign sovereign's carefully disguised fraud claims at face value are evident in the cursory treatment of this issue in *SKAT*. In response to concerns that the refunds sought for fraudulent tax claims intruded upon "the executive branch's responsibility to decide when to aid other sovereigns in enforcing their tax laws," the court in *SKAT* stated—without any legal citations or support—that "nothing in the complaints seeks enforcement of Danish tax law" because the claims "are not ones for tax revenue but for money stolen from the plaintiff by fraud." 356 F. Supp. 3d at 318. Now, these exact claims are considered "revenue claims" under U.S. law.

Moreover, *SKAT*'s unsupported attempt to sidestep the revenue rule by recognizing a plaintiff's artful claim of fraud is plainly at odds with Second Circuit precedent holding that fraudulent tax schemes are not excepted from the rule, even when the claims are fashioned as violations of United States law. In *Canada*, the Canadian government brought suit in the Northern District of New York against several cigarette manufacturers, claiming that the manufacturers developed a fraudulent scheme to avoid paying Canadian cigarette taxes by selling cigarettes to smugglers to the United States who then resold the cigarettes to Canadian black-market distributors. 268 F.3d at 106. Canada alleged that the manufacturers violated RICO by committing mail and wire fraud, which caused Canada harm because "it was deprived of revenue from tobacco

duties and taxes and was forced to spend money to stop defendants' illegal activity." *Id.* at 107-08.

The Second Circuit rejected Canada's argument that because it brought RICO claims seeking recourse for fraud rather than the enforcement of a Canadian tax judgment, the revenue rule did not apply. The court explained, "When presented with such a request which potentially implicates the revenue rule, a court must examine whether the substance of the claim is, either directly or indirectly, one for tax revenues. *What matters is not the form of the action, but the substance of the claim*." 268 F.3d at 130 (emphasis added). The court added, "We are not persuaded by Canada's arguments that this is an action brought solely under United States law, and not a claim for Canadian taxes. On the contrary, Canada seeks to use the United States law to enforce, both directly and indirectly, its tax laws." *Id.* at 131.

Similarly, in *European Community v. RJR Nabisco, Inc.*, a group of European countries and the Colombian government brought suit in the Eastern District of New York against tobacco manufacturers under RICO, claiming that the manufacturers conspired to "commit mail and wire fraud, money laundering, misrepresentations to customs authorities, and various common law torts" by scheming to "smuggle contraband cigarettes into [the plaintiff countries'] territories." 355 F.3d 123, 127 (2d Cir. 2004), *cert. granted, judgment vacated*, 544 U.S. 1012 (2005), *reinstated*, 424 F.3d 175 (2d Cir. 2005). The plaintiff countries claimed that the manufacturers had caused them harm "in the form of lost tax revenues." *Id.* The Second Circuit held that the plaintiff countries' arguments that the revenue rule did not apply were "foreclosed by *Canada*" and concluded that the revenue rule was "implicated by plaintiffs' claims." *Id.* at 137-38.

Thus, regardless of whether a foreign sovereign seeks to recover tax revenue that was illegally avoided due to a fraudulent scheme, as in *Canada* and *EC I*, or tax revenue that was

allegedly to be illegally stolen by fraud, as in *SKAT*, the revenue rule is implicated where the substance of the claim is "one for tax revenues." *Canada*, 268 F.3d at 106, 130.  Notably, the Second Circuit acknowledged the inherent tension of a court "find[ing] itself in the position of being unable to right an alleged wrong," but stated that the only form of "[r]ecourse" for a foreign sovereign seeking to recover tax revenue that has been fraudulently taken or withheld from the sovereign "lies with the executive and legislature." *Id.* 134-35.  No U.S. court—other than this Court and the court in *SKAT*—has concluded otherwise and held that fraudulent claims for tax refunds somehow evade the jurisdictional bar of the revenue rule.  Because *SKAT* disregards these firmly established principles, and because this Court relied primarily on *SKAT* to determine that the revenue rule did not apply here, immediate appeal is necessary to resolve this split in authority.

### C.    An Immediate Appeal May Materially Advance Termination of the Litigation

The last criterion under Section 1292(b) is also satisfied here.  An immediate appeal would materially advance termination of the litigation because, if the Second Circuit agrees with Defendants' views on the application of the revenue rule, all of FPSF's claims will be dismissed and all of the cases in the consolidated action will be over.  *See In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) ("critical requirement" that an interlocutory appeal "have the potential for substantially accelerating the disposition of the litigation" (internal citation omitted)).

This factor strongly supports an interlocutory appeal here given the complexity of the consolidated action, which combines seven federal cases brought by an agency of a foreign sovereignty against individual defendants concerning an allegedly sophisticated scheme that took place in both Belgium and the United States.  "The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)."  *Republic of Colombia II*, 619 F. Supp. 2d at 9 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739, at *4 (S.D.N.Y.

Aug. 12, 1997)).  It follows that "the district court's efficiency concerns are greatest in large, complex cases" such as the present consolidated action.  *Id.* (quoting *In re Lloyd's*, 1997 WL 458739, at *4).  By potentially ending this litigation, an immediate appeal could avoid the need to engage in extensive, procedurally challenging, and costly discovery spanning—at least—two countries.  Such an outcome would be in service of Section 1292(b)'s purpose, which is to "avoid protracted litigation."  *Weber*, 484 F.3d at 159 (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 864 (2d Cir. 1996)).

## II.     This Court Should Stay All Proceedings In This Court Pending the Second Circuit's Decision

In addition to certifying the Order for immediate appeal, the Court should stay proceedings pending the Second Circuit's disposition of Defendants' petition for permission to appeal and, if the petition is granted, of the appeal itself.  In determining whether to stay a case pending an appeal, courts must consider four factors: (1) the possibility of success on the merits, (2) irreparable harm to the applicant absent a stay, (3) whether the stay will substantially injure the other parties to the proceeding, and (4) the public interest.  *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007); *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).  All of these factors augur in favor of a stay pending appeal.

*First*, Defendants have a significant chance of success on the merits.  As the district court in *Republic of Colombia II* pointed out, and as discussed above, consideration of the revenue rule raises "novel," "complex," and "difficult questions about which courts could disagree."  619 F. Supp. 2d at 11.  Moreover, Defendants' position has support from the holding of a justice in the United Kingdom.  *See Skatteforvaltningen*, [2021] EWHC 974 (Comm) (U.K.).

*Second*, Defendants face irreparable harm in the absence of a stay.  Defendants are individuals who do not have unlimited resources, unlike FPSF, which is an agency funded by the

Belgian government.  If the consolidated action continues with complex and expensive discovery and ultimately proceeds to trial, only to be reversed on appeal, the entire litigation "will have been a nullity, irreparably harming both parties" for expending immense resources on cases that should never have been brought in U.S. federal court. *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018) (continuation of litigation "with a case-dispositive issue pending on appeal[] would drain parties' resources and the Court's").

*Third*, FPSF does not face substantial injury in the face of a stay.  FPSF is seeking to recover tax refunds that it claims were fraudulently obtained, and that it paid out between 2012 and 2015.  FPSF's potential delay in receiving monetary recovery from those refunds, were it to ultimately prevail in this consolidated action, is entitled to little weight in light of Defendants' chance of success and looming substantial monetary losses in proceeding with litigation. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (delay in monetary recovery did not outweigh other factors supporting a stay).

*Fourth*, the public interest weighs in favor of efficiently allocating judicial resources by awaiting further proceedings until the Second Circuit has resolved the central legal question in this case.  "[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012); *see Ferring B.V.*, 343 F. Supp. 3d at 292 ("[T]he public interest weights in favor of a stay. It would be a waste of resources—the parties', the Court's, and the public's—to proceed to a trial that turns out to be a nullity.").

## CONCLUSION

For the foregoing reasons, the Court should grant the motion, certify the revenue rule issue for interlocutory appeal, and stay all proceedings in this Court until the Second Circuit issues its decision.

Dated: July 26, 2023                              Respectfully submitted,


                                                  */s/ Alan Schoenfeld*
                                                  Alan Schoenfeld
                                                  Wilmer Cutler Pickering
                                                      Hale and Dorr LLP
                                                  7 World Trade Center
                                                  250 Greenwich Street
                                                  New York, NY 10007
                                                  Tel. (212) 230-8800
                                                  Fax: (212) 230-8888
                                                  alan.schoenfeld@wilmerhale.com

                                                  *Attorney for Defendants Batavia Capital
                                                  Pension Plan, Calypso Investments Pension
                                                  Plan, Richard Markowitz, and RJM Capital
                                                  Pension Plan*

                                                  */s/ Sharon L. McCarthy*
                                                  Sharon L. McCarthy
                                                  Nicholas S. Bahnsen
                                                  Kostelanetz & Fink, LLP
                                                  7 World Trade Center, 34th Fl.
                                                  New York, NY 10007
                                                  Tel. (347) 613-0829
                                                  smccarthy@kflaw.com

                                                  *Attorneys for Defendants Azalea Pension
                                                  Plan, Bernina Pension Plan Trust, John van
                                                  Merkensteijn, Michelle Investments LLC
                                                  Pension Plan, Remece Investments LLC
                                                  Pension Plan, Tarvos Pension Plan, and
                                                  Xiphias LLC Pension Plan*

                                                  */s/ Timothy S. Martin*
                                                  Timothy S. Martin
                                                  Kaplan Hecker & Fink LLP
                                                  350 Fifth Avenue, 63rd Fl.
                                                  New York, NY 10118
                                                  Tel. (212) 763-0883
                                                  tmartin@kaplanhecker.com

                                                  *Attorney for Defendants Alden Investments
                                                  Pension Plan, AOI Pension Plan, Carrick
                                                  Holdings Pension Plan, Ganesha Industries
                                                  Pension Plan, Jerome Lhôte, Matthew Stein,*

*Mazagran Pension Plan, and Pleasant Lake Productions Pension Plan*

*/s/ Linda Imes*
Linda Imes
Reed M. Keefe
Spears & Imes LLP
767 Third Avenue
New York, NY 10017
Tel. (212) 213-6659
Fax: (212) 213-0849
limes@spearsimes.com

*Attorneys for Defendants Alicia Colodner and Delvian LLC Pension Plan*

*/s/ Edward M. Spiro*
Edward M. Spiro
Richard D. Weinberg
Morvillo Abramowitz Grand
   Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017
Tel. (212) 856-9600
espiro@maglaw.com

*Attorneys for Defendants Adam LaRosa, Clove Pension Plan, Mill River Capital Management Pension Plan, and Traden Investments Pension Plan*

*/s/ Michelle A. Rice*
Michelle A. Rice
Kaplan Rice LLP
142 W. 57th Street, Suite 4A
New York, New York 10019
Telephone: (212) 235-0300
Fax: (212) 235-0301
mrice@kaplanrice.com

*Attorney for Defendants*
*Next Level Pension Plan Trust,*
*Spirit on the Water Pension Plan, Rajan*
*Investment LLC Pension Plan, Laegeler Asset*
*Management Pension Plan, DFL Investments*

*Pension Plan and Davin Investments Pension Plan*

*/s/ Robert H. Pees*
Robert H. Pees
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel. (212) 872-1000
Fax: (212) 872-1002
rpees@akingump.com

*Attorney for Defendants 2321 Capital Pension Plan, Bowline Management Pension Plan, Lion Advisory Inc. Pension Plan, and Luke McGee*

*/s/ Michael Lloyd Yaeger*
Michael Lloyd Yaeger
Natalie Ann Napierala
Carlton Fields P.A.
405 Lexington Avenue
Ste 36th Fl.
New York, NY 10174
Tel. (212) 785-2577
Fax: (212) 785-5203
myaeger@carltonfields.com

*Attorneys for FGC Securities LLC and Stephen Wheeler*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum complies with the type-volume limitations in Your Honor's Individual Rules of Practice.  Exclusive of the exempted portions of the memorandum, the memorandum contains 5,852 words.  The memorandum has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.  The undersigned has relied on the word-count feature of this word-processing system in preparing this certificate.

*/s/ Alan Schoenfeld*
Alan Schoenfeld

July 26, 2023